LOCAL 92, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, Plaintiff-Appellant,

v.

B & B STEEL ERECTORS, INC. Bra Bar Company, Defendants-Appellees.

No. 86–7844.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1988.

George C. Longshore, Birmingham, Ala., for plaintiff-appellant.

C.V. Stelzenmuller, Burr & Forman, Birmingham, Ala., for defendants-appellees.

Before FAY, Circuit Judge, HENDERSON [*], Senior Circuit Judge, and FORRESTER [**], District Judge.

FORRESTER, District Judge:

In this action under section 301 of the Labor Management Relations Act we are asked to construe the voidability and repudiation of a pre-hire agreement. We agree with the district court's grant of summary judgment to the employer and therefore affirm.

## I. FACTS AND PROCEDURAL HISTORY

Appellant Local 92 ("Local 92" or "the union") brought this section 301 [1] action against appellee B & B Steel Erectors, Inc. ("B & B" or "the employer"), alleging that B & B or its successor company is bound by and has breached an October 29, 1985 agreement between Local 92 and a multi-employer bargaining unit known as the Steel Erectors and Crane Rental Association ("the association"). B & B contends that its previous collective bargaining agreement with Local 92 was a voidable pre-hire agreement under section 8(f), [2] that it repudiated that agreement on August 31, 1985 and that it is therefore not bound by the local's subsequent agreement with the association.

A number of agreements preceded the October 1985 agreement. In September 1982 B & B signed a short form of agreement with the union adopting the agreement between the union and a multi-employer bargaining unit known as Associated General Contractors (AGC). The AGC agreement's stated duration was from September 1, 1982 to midnight, August 31, 1985. B & B contends that in signing the short form it did not delegate its bargaining authority to AGC. Early in 1983 the union began offering project agreements at wage rates below the AGC rates in order to get work for its members.

On August 7, 1984 six employers, including B & B, signed a document entitled "Intent to Create a Steel Erection and Crane Rental Association." On August 16, 1984 the association was incorporated. The association's incorporation papers refer to negotiating labor contracts but are silent as to any delegation of authority to bind any employer without further manifestation of the employer's assent. Sometime thereafter an undated document entitled "Experimental Stipulation Agreement" (ESA) was drafted and signed by the union and the association. The ESA purported to amend the AGC agreement and was to be effective from August 1984 to August 31, 1985. The ESA gave the employers the right to employ directly by name any num-

---

[*] See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable J. Owen Forrester, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. 29 U.S.C. § 185(a).

2. 29 U.S.C. § 158(f).

ber of non-union journeymen or pre-apprentices, provided that those employees reported to work with referrals from the union hiring hall. Employers were permitted to hire pre-apprentices without referral if the union failed to provide pre-apprentice applicants within forty-eight hours of an employer's request, but the employers were required to provide such "off the street" employees' names and addresses to the union within twenty-four hours. Pre-apprentices' wage rates were set at fifty percent of journeymen's, regardless of skill level or length of employment. Pre-apprentices were to be employed in a two-to-one ratio or one-to-one ratio to journeymen, depending on the work performed. Finally, the ESA also expressly permitted project or "target area agreements" with terms more favorable to employers than those of the ESA.

In January 1985 B & B entered into an oral project pre-hire agreement with the union "allowing B & B to hire 'pre-apprentices' off the street at whatever ratio to journeymen, hired from the hall, that it took to get the job, at $5.00 an hour and no fringes the first year; and paying journeymen $10.00 an hour." R. 1–12–4. Project agreements on the same terms were made on all work B & B subsequently did, including the projects in progress as of August 30, 1985.

On Friday, August 30, 1985 the owners of B & B met with their employees at the three jobs in progress. On each of the projects fewer than half of the employees were union members. As related in the affidavit of employee Wiley Moseley, the owners

> told the employees that they felt like they could not operate union any longer and that B & B was going to close down September 1 and lay off all its employees, but that there would be a new Company which would take over all the jobs. The name of the Company would be Bra Bar Erection, Inc. He said any of us who wanted to go to work for Bra Bar could do so, but it would be non-union.... He said Bra Bar could not afford to give any raises, but was not going to cut anybody's pay either. He said they were not

going to pay union fringes or working assessments but were working on getting some group health insurance which the Company was going to pay for.

R. 1–12–15, 16.

All union employees of B & B went to work for Bra Bar the following Monday and did not lose any time. Two of the employees went to the union hall on Friday, August 30, and met with its business agent. The employees told the business agent everything the owners had told the employees and asked what they should do. They were told that they could not be both union and non-union but that they should go to work until they were told to come off the job. The business agent promised that he would talk to the owners and try to get them to sign a contract. B & B sent a letter to the union on August 30, which the union received, stating that it was "going out of business on August 31, 1985."

On October 29, 1985 the union and the association signed a new agreement, a second ESA, in place of the previous AGC agreement that expired August 31, 1985. The new agreement had an effective date of September 1, 1985.

In its complaint, the union alleged that B & B was bound by the terms of the new agreement on the theory that B & B's withdrawal from the Steel Erectors and Crane Rental Association was ineffective. The union sought declaratory and equitable relief, including an injunction requiring B & B to submit to arbitration, and unspecified monetary damages. In the pretrial order, the union clarified that it sought "appropriate fringe benefit payments," "lost wages to members who otherwise would have received referrals," and "reimbursement for the loss of the two percent wage assessment."

B & B moved for summary judgment in the district court on the grounds that its relationship with the union was governed by a pre-hire agreement under 29 U.S.C. § 158(f) that was voidable despite B & B's relationship with the association. The district court found that the AGC agreement, "along with other agreements, created a

pre-hire agreement between the Union and B & B." R. 1–18–5. The court also concluded that "[t]he facts ... show that B & B had effectively repudiated its agreement with the Union as of August 31, 1985." *Id.* at 5–6. Because a section 8(f) pre-hire agreement is voidable by a repudiation until the union establishes majority support, *Painters Local Union No. 164 v. Epley,* 764 F.2d 1509 (11th Cir.1985), and because it was undisputed that the union had never achieved majority status in B & B's work force, the court concluded that B & B had the right to repudiate the pre-hire agreement on August 31, and that Bra Bar was therefore not bound by the October 29 agreement. The court therefore granted B & B's motion for summary judgment.

The union's subsequent motion for reconsideration alleged that "the Union's lack of majority status was the result of the defendant's failure to follow the collective bargaining agreement's referral rules" and that "[t]here is a factual dispute as to why the union lacked majority support." That motion was denied.

The union then appealed to this court on three issues:

(1) Whether the union's minority status in September 1985 rendered the pre-hire agreement subject to repudiation without regard to the employer's alleged action in undermining the union's majority;

(2) Whether the district court erred in holding that B & B effectively repudiated the pre-hire agreement; and

(3) Whether B & B incurred liability for damages to the union for breach of the pre-hire agreement prior to the repudiation.

Because we agree with the district court that the pre-hire agreement was subject to repudiation and that B & B effectively repudiated the agreement, we affirm the grant of summary judgment on those two issues. Because the union's claim for *damages* from B & B's alleged breach of the pre-hire agreement's referral rules was not raised below, we decline to reach it for the first time on appeal.

## II. DISCUSSION

### A. *Voidability of the Pre-Hire Agreement*

■ It is settled law that "a pre-hire agreement is *voidable* by the employer and that such an agreement does not become a collective bargaining contract unless the union actually represents a majority of the employees in the relevant unit and is recognized as such by the employer." *Epley,* 764 F.2d at 1514 (original emphasis). It is undisputed that the union in this case had not established majority status either at any particular project or in B & B's overall work force. The district court therefore correctly concluded that any pre-hire agreement in force between B & B and the union—the AGC agreement, the ESA, or a project agreement—was voidable.

The union argues that B & B should not be allowed to repudiate its agreement with the union for two reasons. First, the union argues that a project agreement is not a section 8(f) pre-hire agreement but is instead a section 9 agreement that is not voidable. The union is simply wrong. Nothing in the two cases on which it relies, *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), and *A.L. Adams Company v. Georgia Power Company,* 557 F.Supp. 168 (S.D.Ga.1983), *aff'd,* 733 F.2d 853 (11th Cir.1984), supports the proposition that project agreements are section 9 agreements that are not voidable. In fact, the Eleventh Circuit in *A.L. Adams* affirmed the district court's conclusion that the project agreement involved in that case was "a valid pre-hire agreement under section 8(f)." 733 F.2d at 855. *See also NLRB v. Haberman Const. Co.,* 641 F.2d 351, 368 (5th Cir.1981) ("in order to enforce a section 8(f) contract with a project-by-project employer, the union must re-establish its majority at each successive job site").

■ Second, the union argues that B & B should be estopped from asserting the union's non-majority status because B & B's failure to follow the referral rules

caused the union's lack of majority status.[3]

The union's estoppel remedy argument is without merit. Even assuming that B & B did breach the pre-hire agreement by failing to follow its referral rules, the union has not pointed to any evidence that the breach caused the union's failure to achieve majority status. It is undisputed that, as of the date of B & B's repudiation, B & B employed a total of thirty-one workers. Twenty-two of the thirty-one were paid $10.00 per hour or more and eight of the twenty-two were union members. Assuming, as the union argues, that all twenty-two workers being paid "journeymen's wages" were in fact journeymen who should have been "hired from the hall," the union would attain majority status on the project if eight of the fourteen remaining journeymen had been union members.

However, there is no evidence that if B & B had hired the remaining fourteen employees on referral from the union at least eight of the fourteen would have been union members, thereby giving the union majority status. It cannot be argued that the union deliberately would have referred only union members, since federal and state law require an open shop. 29 U.S.C. § 158(a)(3) and (b)(2); Alabama Code Section 25–7–30. The pre-hire agreement's requirement that journeymen be "hired from the hall" is a *referral* requirement, not a requirement that B & B hire only union members. Nor can the union rely on the allegation by the assistant business agent for Local 92 that "It appears that if Local 92 did not represent a majority of workers it was because B and B violated our contract by hiring from an unauthorized source." R. 1–16–4. Rule 56(e) requires the nonmoving party to designate *"specific facts* showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), not simply conclusory allegations with no revealed basis in fact. Moreover, as B & B points out, B & B could have recruited non-union workers, sent them to the hiring hall to get a referral slip—which the union could not deny because of its duty not to discriminate —and then hired the non-union workers.

At least in the absence of any causal link between B & B's breach of the pre-hire agreement and the union's lack of majority status, the collateral estoppel remedy sought by the union would violate the non-union workers' rights. Estopping the employer from asserting the union's non-majority status would allow the union to convert its section 8(f) pre-hire agreement into a section 9 collective bargaining agreement, thereby installing the minority union as the employees' exclusive bargaining representative without the consent of the employees. In the leading Supreme Court decisions discussing the enforceability of section 8(f) pre-hire agreements, *Jim McNeff, Inc.,* 461 U.S. 260, 103 S.Ct. 1753, and *NLRB v. Iron Workers,* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978) (*Higdon* ), the Court was careful not to infringe employees' rights, under section 7, to select their own bargaining representative. In *Higdon,* the Court held that a union commits an unfair labor practice by picketing to enforce a pre-hire agreement before it has attained majority status. In describing the holding of *Higdon,* the Court in *Jim McNeff, Inc.,* stated: "If ... an employer could be compelled by picketing to treat a minority union as the exclusive bargaining agent of employees, the section 7 rights of those employees would be undermined to an extent not contemplated by Congress." 461 U.S. at 268, 103 S.Ct. at 1758. The union in this case cites no authority supporting the application of an estoppel remedy in cases such as this and the remedy

---

**3.** A threshold issue is whether the estoppel argument is properly before this court. The argument is not found in the complaint or the pretrial order, which allege only breaches of the October 29, 1985 agreement. The issue was first raised in the union's motion for reconsideration of the district court's grant of summary judgment. Though the argument was raised late in the summary judgment proceedings, it is a legitimate argument in opposition to B & B's motion for summary judgment and was raised in time for the district court to consider it with regard to that motion. The estoppel issue is therefore not one that has been raised for the first time on appeal after a contrary position was taken in the district court. *Cf. Sanders v. United States,* 740 F.2d 886 (11th Cir.1984).

itself appears to be flatly contrary to Congress' concerns as expressed in section 7 and as described by the Supreme Court.[4]

### B. *B & B's Repudiation of the Pre-Hire Agreement*

■ Though the Supreme Court has not had occasion to decide whether repudiation may be effected by conduct, *see Jim McNeff, Inc.*, 461 U.S. at 270 n. 11, 103 S.Ct. at 1759 n. 11, other federal courts have concluded that repudiation of a section 8(f) agreement is effected by conduct "sufficient to put the union and the employees on notice that the agreement is terminated." *New Mexico v. Jordan & Nobles Construction Co.*, 802 F.2d 1253, 1255–56 (10th Cir.1986), quoting *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction and Equipment Co.*, 733 F.2d 1321, 1326 (8th Cir.1984). *See also Operating Engineers Pension Trust v. Beck Engineering and Surveying Company*, 746 F.2d 557, 565–66 (9th Cir.1984) (single employee situation).

This circuit is no exception. In *Epley*, 764 F.2d at 1514, this court described an employer's conduct as a "clear repudiation." The employer "told the union that he was not going to use union labor" at his job site. *Id.* at 1512. *See also Trustees of the Atlanta Iron Workers Local 387 Pension Fund v. Southern Stress Wire Corp.*, 509 F.Supp. 1097, 1105 (N.D.Ga.1981), *rev'd on other grounds*, 724 F.2d 1458 (11th Cir.1983) ("In order to repudiate his obligations under a pre-hire agreement, an employer must ... give notice to the union

sufficient to make manifest his intent to terminate the agreement").

There can be no doubt that the employer's conduct in this case was sufficient to put the union and the employees on notice that the agreement was terminated. B & B closed its operations and notified the union that it was going out of business, gave notice to the association of its intent to resign from the association, and told its employees that the company could not operate union any longer and that the new company would be non-union. The union's business agent obviously understood the implications of B & B's actions, telling two employees that they could not be both union and non-union and that he would attempt to get B & B to sign a contract. B & B's conduct here was at least as sufficient to put the union on notice as was the conduct in *Epley*, 764 F.2d at 1512, 1514, and *Haberman Const. Co.*, 641 F.2d at 357–58 (employer's statement of its intention to go "open shop" and its simultaneous repudiation of its obligation to pay employees' benefits "conveyed an intention to repudiate its bargaining obligations").[5]

### C. *B & B's Breach of the Pre-Hire Agreement*

■ Also in this appeal, the union argues for the first time that it is entitled to monetary damages, as well as the collateral estoppel remedy discussed earlier, for B & B's alleged breach of the pre-hire agreement. The union asserts that its members are "entitled to a back pay remedy flowing from the employer's failure to either notify the union of vacancies or to notify the local that pre-apprentices had

---

**4.** The union's reliance on *NLRB v. Gissel Packing Company*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), and *J.P. Stevens & Company v. NLRB*, 441 F.2d 514 (5th Cir.1971), is misplaced. Those cases upheld bargaining orders where the NLRB found "outrageous" and "pervasive" unfair labor practices by the employer, coupled with a "card majority" for the union.

**5.** Some courts have described the question whether an employer's conduct amounts to repudiation as "a question of fact that requires an examination of the conduct of all parties." *Harkins Construction*, 733 F.2d at 1326, citing *Southern Stress Wire Corp.*, 509 F.Supp. at 1105.

The law in this circuit is to the contrary, at least where, as here, the facts concerning the employer's conduct are undisputed. Given undisputed facts, the district court on summary judgment and this court on appeal may draw the conclusion that as a matter of *law* an employer's conduct is or is not sufficient to repudiate the voidable pre-hire agreement. If it were otherwise, this court in *Epley*, 764 F.2d at 1511, would have remanded to the district court on the repudiation question rather than concluding "that the district court erred ... [because] the evidence demonstrates that Epley repudiated the pre-hire agreement."

been hired." Brief of Appellants at 23. We decline to reach this issue because it was not raised before the district court. As noted earlier, the complaint and the pretrial order in this case were concerned exclusively with B & B's alleged breaches of the *October 29, 1985* agreement. The collateral estoppel remedy argument was properly before this court because it was raised in the district court in connection with the union's opposition to B & B's motion for summary judgment, *see* note 3, *supra,* and because, if the argument were meritorious, it would establish B & B's liability under the October 29, 1985 agreement. Neither is true here; B & B was never on notice of an independent claim for damages for allegedly breaching the *prehire agreement* prior to its repudiation. "As a general rule, an appellate court will not consider an issue raised for the first time on appeal unless failure to do so would result in a miscarriage of justice." *Sanders,* 740 F.2d at 888. The union has not attempted to identify any miscarriage of justice in this case and the general rule therefore applies.

### III. CONCLUSION

The district court correctly concluded that the parties' agreement was a pre-hire agreement subject to repudiation and that the employer's repudiation was effective. The employer cannot be estopped from asserting the union's minority status since there is no evidence that the union would have obtained majority status absent the employer's alleged breach of the pre-hire agreement's referral rules. In this case, the estoppel remedy sought by the union would violate the non-union majority's rights. Finally, the union's claim for monetary damages flowing from the employer's alleged failure to follow the referral rules was not raised in the district court and will not be considered here.

The order of the district court is AFFIRMED.