United States Court of Appeals,

Eleventh Circuit.

No. 96-6036.

LOCAL UNION 48 SHEET METAL WORKERS, Board of Trustees, Sheet Metal Workers National Pension Fund, Board of Trustees, Sheet Metal Workers National Cola Fund, Board of Trustees, National Stabilization Agreement of Sheet Metal Industry Trust Fund, Board of Trustees, National Training Fund for the Sheet Metal and Air Conditioning Industry, Board of Trustees, National Energy Management Institute Committee, Board of Trustees, Sheet Metal Occupational Health Institute Trust Fund, Sheet Metal Workers Local Union No. 48 Welfare Fund, JW Rollan, Abram Carpenter, Sam P. Rollan, Jr., Ken Turner, Gene Dykes, David Shelby as Trustees of Sheet Metal Workers Local Union No. 48 Welfare Fund, Plaintiffs-Counter-Defendants, Appellants,

v.

S.L. PAPPAS & COMPANY, INC., Defendant-Counter-Claimant, Appellee,

P & M Mechanical, Inc., Defendant-Appellee.

Feb. 28, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-92-H-2036-S), James H. Hancock, District Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and STAGG[*], Senior District Judge.

STAGG, Senior District Judge:

Plaintiffs/Appellants, Sheet Metal Workers Local Union No. 48, et al. ("the Union"), appeal the district court's decision granting summary judgment in favor of Defendants/Appellees, S.L. Pappas & Company, Inc., and P & M Mechanical, Inc. ("Pappas"). Based on prior decisions of this circuit, we affirm the district court on other grounds.

*I. FACTS AND PROCEDURAL HISTORY*

---

[*]Honorable Tom Stagg, Senior U.S. District Judge for the Western District of Louisiana, sitting by designation.

The Union filed this action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), against Pappas, alleging that Pappas was bound by and had breached a collective bargaining agreement effective from June 1, 1991, through May 31, 1994. Pappas contended that the previous collective bargaining agreement between the parties was a voidable pre-hire agreement under section 8(f), 29 U.S.C. § 158(f), and that Pappas had repudiated the agreement, in writing, prior to the commencement of negotiations for a new or successor pre-hire agreement.

The following facts are taken from the district court's October 6, 1995 Memorandum of Decision. Plaintiff, the Union, is a labor organization representing employees who perform roofing, ventilating, and air conditioning contract services for the construction industry. Plaintiff Trustees[1] are respective Boards of Trustees for various welfare funds ("the Funds") which provide benefits for qualified employees of the Union. Defendant Pappas was a corporation performing services as a mechanical subcontractor in Alabama. Pappas was a member of the Mechanical Contractors Association of Birmingham, Alabama, Inc. ("MCA"), which is a multi-employer bargaining unit representing various employers in negotiating agreements with the Union. Since its incorporation, through its membership in MCA, Pappas was a party to a series of

_____

[1]The Plaintiff/Trustees are Boards of Trustees for the following funds: Sheet Metal Workers National Pension Fund, Sheet Metal Workers National Cola Fund, National Stabilization Agreement of Sheet Metal Industry Trust Fund, National Training Fund for the Sheet Metal and Air Conditioning Industry, National Energy Management Institute Committee, and Sheet Metal Occupational Health Institute Trust Fund.

section 8(f) pre-hire agreements with the Union. On June 1, 1988, Pappas signed a pre-hire agreement with the Union ("the 1988-1991 agreement") which obligated Pappas periodically to contribute specified amounts to the Funds through May 31, 1991. By letter dated January 22, 1991, before the commencement of negotiations for a new pre-hire agreement, Pappas informed the Union that the multi-employer bargaining unit was no longer a labor negotiating agent for Pappas. Pappas's January 22 letter was not, however, provided at least 150 days prior to the expiration of the 1988-1991 agreement as required by the terms of the agreement. On January 30, 1991, the Union provided Pappas with a 90-day notice of the Union's intent to reopen certain aspects of the 1988-1991 agreement. Pappas did not take part in the negotiations between the MCA and the Union in 1991. On June 1, 1991, the Union sent Pappas a copy of an agreement negotiated between the MCA and the Union covering a period from 1991-1994 ("1991-1994 agreement") requesting that Pappas sign the agreement and return it to the Union. Pappas discarded the agreement without signing it. Pappas did, however, continue to use the union hiring hall, pay union wages, and contribute to the plaintiff funds until Pappas ceased operations the last week of May 1992.

In April of 1991, P & M Mechanical, Inc. ("P & M"), was incorporated to perform mechanical work as a subcontractor in Alabama, Georgia, and South Carolina. P & M and Pappas have the same owners and P & M leases its building space from Pappas. The district court, in its August 5, 1994 opinion, held that Pappas and P & M were a "single employer" under the Act. Thus, P & M would be

bound by the same agreements to which Pappas was bound.

The 1988-1991 agreement bound Pappas to be a member of the multi-employer bargaining unit, and thus, contribute to the Funds, until Pappas gave written notice of withdrawal to the Union at least 150 days prior to the then-current expiration date of the agreement.  If Pappas did not give such notice, the agreement provided that Pappas would be bound by any successor agreement entered into by the parties.

In its complaint, the Union alleged that Pappas was a party to the 1991-1994 agreement and thus was required to contribute to the various multi-employer funds pursuant to this agreement.  The Union sought specific performance of the section 8(f) agreement and declaratory and injunctive relief, including requiring Pappas to contribute to the Funds, to utilize the union hiring hall, and to pay contractually established wages.  The Union also sought liquidated damages and attorney's fees.

The Union originally moved for partial judgment on the pleadings, which the district court treated as a motion for partial summary judgment.  Pappas filed an opposition to the motion for partial judgment on the pleadings, which the district court treated as a cross-motion by Pappas for partial summary judgment.  The Union then filed a second motion for summary judgment requesting, *inter alia,* that the district court find Pappas and P & M to be single employers and that both be bound by the 1991-1994 pre-hire agreement.  The district court ruled in favor of the Union on both issues.  Pappas and P & M were found to be bound to the successor agreement because Pappas did not provide notice of repudiation

within the 150 day period required by the 1988-1991 agreement. Thus, they were obligated to make the requisite contributions to the Funds covered by the pre-hire agreement. Pappas moved for reconsideration, which was denied.

The Union, after completing discovery, moved for summary judgment on the remaining issues not covered by the district court in its August 5, 1994 ruling. On October 6, 1995, the district court entered summary judgment in favor of Pappas. The district court based its ruling on a newly released decision of the National Labor Relations Board, *James Luterbach Construction Co., Inc.*, 315 N.L.R.B. 976 (1994). *Luterbach* returned the status of NLRB law regarding section 8(f) agreements to the position it previously held in *John Deklewa & Sons*, 282 N.L.R.B. 1375 (1987), *enf'd sub nom. Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770 (3rd Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988). The Union filed a motion to reconsider, which was granted by the district court. Ultimately, however, the district court determined that its October 6 ruling was correct and reinstated that ruling in its final judgment dated December 5, 1995. This appeal followed.

On appeal, the Union argues that Pappas is bound by the successor agreement, that is, the 1991-1994 agreement, because Pappas did not give notice of withdrawal within the 150 day notice period provided in the 1988-1991 agreement. The Union claims that Pappas must make the requisite contributions to the Funds because Pappas is bound by the successor agreement for 1991-1994. Pappas makes two arguments, only one of which is considered by this court.

First, Pappas argues that this court must affirm the decision of the district court based on Eleventh Circuit precedent, which we are required to follow under the prior panel decision rule. Second, Pappas argues that if *Luterbach* and *Deklewa* apply in this instance, we should affirm the district court for the reasons provided in its October 6, 1995 ruling. Namely, Pappas argues that upon the expiration of the 1988-1991 agreement, it was free to withdraw from the successor agreement since it did not take "distinct affirmative action" to bind itself to the successor agreement. *See Luterbach,* 315 N.L.R.B. 976 (1994). We agree with the former argument and affirm (on other grounds) the decision made by the district court. Our decision is based on Eleventh Circuit precedent and not on NLRB decisions not yet adopted by this circuit.

## II. STANDARD OF REVIEW

This court reviews the grant of summary judgment "*de novo* " and "must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. All evidence and reasonable factual inferences drawn therefrom are reviewed in the light most favorable to the party opposed to the motion." *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citations omitted).

## III. DISCUSSION

A. The Law Regarding Section 8(f) Agreements

"A section 8(f) agreement is a labor contract negotiated between a construction employer and a union [that] does not represent a majority [of the employees] at the time of contract

execution." *Plumbers and Pipefitters Local Union 72 v. John Payne Co., Inc.,* 850 F.2d 1535, 1538 (11th Cir.1988), quoting *Construction Erectors, Inc. v. NLRB,* 661 F.2d 801, 804 (9th Cir.1981). If a union does not achieve majority representative status among a company's employees, the employer/union agreement can only be viewed as a pre-hire agreement, as contemplated by section 8(f) of the LMRA and not as a fully enforceable collective bargaining agreement. *See John Payne,* 850 F.2d at 1538.

In *U.S. Mosaic Tile Co., Inc. v. NLRB,* 935 F.2d 1249 (11th Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992), we provided a thorough explanation of the difference between section 8(f) and section 9(a) agreements and the bargaining protections that flow from each type of agreement.

> Section 8(f) of the Act provides an exception to other bargaining provisions of the Act for the construction industry. Generally, a collective bargaining representative (union) outside the construction industry must be designated or selected by a majority of the employees in a given unit before that representative can have the exclusive right to represent the employees in bargaining with the employer. Once a representative achieves this status under § 9(a), it receives various bargaining protections provided by § 8(a) and (b) of the Act. The union also receives a presumption of majority status for a reasonable time, including during the period immediately after the end of a prior agreement when the parties are bargaining for a new contract.... Congress, recognizing the uniquely fluctuant nature of the construction industry, enacted § 8(f), which enables a representative of employees in the construction industry to enter a collective bargaining agreement with an employer without first having achieved majority status. The agreements are known as pre-hire agreements.... Prior to *Deklewa* the Board interpreted § 8(f) to permit either party to terminate the bargaining agreement at will, so long as the union had not achieved majority status. *R.J. Smith Construction,* 191 N.L.R.B. 693, enf. denied sub nom. *Operating Engineers Local 150 v. NLRB,* 480 F.2d 1186 (D.C.Cir.1973). The Board also determined, however, that if the union achieved majority status during the period of the agreement, it would receive the same protections as a § 9(a) union, including the presumption of majority status upon the expiration of the

> bargaining agreement.... The Board, realizing the confusion and difficulty created by its own interpretation, decided to overhaul its view of § 8(f) agreements. Thus, in *Deklewa,* the Board decided that pre-hire agreements were no longer terminable at will, but were valid for the entire term. Additionally, the Board stated that the union would no longer receive the presumption of majority status upon expiration of the agreement, and thus would not retain the right to exclusive bargaining at that point. The union could, however, achieve majority status through the traditional methods for becoming a § 9(a) representative: Board certified election or voluntary recognition by the employer. 843 F.2d at 778.... Several circuits have now approved of *Deklewa,* often relying on the reasoning used by the Third Circuit when it enforced *Deklewa* in *International Assoc. of Iron Workers v. NLRB....*

*Mosaic Tile,* 935 F.2d at 1253 n. 2 (citations omitted). In *Mosaic Tile,* we refrained from speaking to the viability of *Deklewa* in this circuit because the employer's attempt to argue *Deklewa* was untimely. *Id.* at 1253.

We again decline to speak to the viability of *Deklewa* because we must strictly follow the prior panel rule. *See United States v. Woodard,* 938 F.2d 1255, 1258 (11th Cir.1991), *cert. denied,* 502 U.S. 1109, 112 S.Ct. 1210, 117 L.Ed.2d 449 (1992) (holding that "[t]he law in this circuit is emphatic that "only a decision by this court sitting *en banc* or the United States Supreme Court can overrule a prior panel decision,' " quoting *U.S. v. Machado,* 804 F.2d 1537, 1543 (11th Cir.1986)). The prior panel decision rule is applied in this circuit to such an extent that where there is a conflict between panel decisions within this circuit, the earlier decision is binding until the court decides the issue *en banc. Clark v. Housing Authority of City of Alma,* 971 F.2d 723, 726 n. 4 (11th Cir.1992). The law of this circuit regarding the ability to repudiate section 8(f) agreements is found in *Plumbers and Pipefitters Local Union 72 v. John Payne Co., Inc.,* and *Local 92,*

*Int'l Assoc. of Bridge, Structural and Ornamental Ironworkers v. B & B Steel Erectors, Inc.,* 850 F.2d 1551 (11th Cir.1988).[2]

In *John Payne,* a post-*Deklewa* decision, this circuit cited with approval *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 271-72, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983), which held that under section 301 actions to recover money allegedly owed to a union fund, a section 8(f) pre-hire agreement is subject to repudiation until the union establishes majority status in a section 9(a) election. *John Payne,* 850 F.2d at 1540. In *John Payne,* the union did not claim to have ever achieved majority representative status among the company's employees. *Id.* at 1538. Thus, the pre-hire agreement was not a fully enforceable collective bargaining agreement. *Id.* This circuit followed *McNeff* regarding section 8(f) agreements and then proceeded to determine whether the employer had made an effective repudiation. *Id.* at 1540.

In *Local 92,* also a post-*Deklewa* decision, we stated, "[i]t is well settled law that "a pre-hire agreement is voidable by the employer and that such an agreement does not become a collective bargaining contract unless the union actually represents a majority of the employees in the relevant unit and is recognized by the employer.' " *Local 92,* 850 F.2d at 1554, quoting *Painters Local Union No. 164 v. Epley,* 764 F.2d 1509, 1514 (11th Cir.1985), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). The panel agreed with the district court which held that because a section 8(f) pre-hire agreement is voidable by repudiation until

---

[2]*John Payne* was decided on August 3, 1988. *Local 92* was decided the next day, by a different panel, on August 4, 1988.

the union establishes majority support and because it was undisputed that the union had never achieved majority status in B & B's work force, the district court concluded that B & B had the right to repudiate the pre-hire agreement. *Local 92,* 850 F.2d at 1554.

In the case *sub judice,* it is undisputed that the Union did not establish majority support of the workforce at Pappas or at P & M. Under *John Payne* and *Local 92,* Pappas could repudiate the 1988-1991 section 8(f) agreement at any time prior to the Union establishing majority support of the work force. If Pappas made an effective repudiation, Pappas would be bound by neither the 1988-1991 agreement nor by the successor agreement, the 1991-1994 agreement. Following the prior panel decision rule and controlling Eleventh Circuit precedent, we affirm the decision of the district court. We decline to reach the issue of whether *Luterbach* and *Deklewa* are viable in this circuit.

B. Effective Repudiation By Pappas

Next, we must determine whether Pappas effectively made the repudiation that is authorized under *John Payne* and *Local 92.* In order to repudiate a pre-hire agreement, an employer must give notice to the union sufficient to make manifest his intent to terminate the agreement. *Local 92,* 850 F.2d at 1556, *citing Trustees of the Atlanta Iron Workers Local 387 Pension Fund v. Southern Stress Wire Corp.,* 509 F.Supp. 1097, 1105 (N.D.Ga.1981), *rev'd on other grounds,* 724 F.2d 1458 (11th Cir.1983).

There is no doubt that Pappas made an effective repudiation of the 1988-1991 agreement by way of its letter dated January 22,

1991.  The letter stated in clear terms that MCA was no longer the labor negotiating agent for Pappas.  Pappas's conduct also made manifest that it had repudiated the agreement.  Pappas did not participate in the negotiations for the successor contract.  Ultimately, when Pappas received the 1991-1994 agreement from the Union for Pappas's signature, it did not sign the agreement, but rather discarded it.  Thus, Pappas made an effective repudiation of the pre-hire agreement and was not bound by the successor agreement for 1991-1994.

Because the Union's claims are dismissed, its appeal of the district court's decision to strike the Union's jury demand is rendered moot.

The order of the district court granting judgment for Pappas is affirmed.

AFFIRMED ON OTHER GROUNDS.