TRUSTEES OF the ATLANTA IRON
WORKERS, LOCAL 387 PENSION
FUND, et al., Plaintiffs-Appellants,

v.

SOUTHERN STRESS WIRE CORPORA-
TION, Defendant-Appellee.

No. 82–8630

Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1983.

James T. Langford, Atlanta, Ga., for
plaintiffs-appellants.

Floyd E. Siefferman, Jr., Nicholas G. Du-
mich, Atlanta, Ga., for defendant-appellee.

Before HATCHETT, ANDERSON and
CLARK, Circuit Judges.

PER CURIAM:

Appellants, Trustees of the Atlanta Iron-
workers Local Union No. 387 Pension Fund,
Southeastern Ironworkers Health and Wel-
fare Fund and Atlanta Ironworkers Local
Union No. 387 Apprenticeship Fund (Trus-
tees), appeal the district court's dismissal of
their labor relations action brought pursu-
ant to 29 U.S.C.A. §§ 185, 186, and 1132.
Because the district court's order is based
on Eleventh Circuit precedent which the
United States Supreme Court has over-
ruled, we reverse and remand to the district
court.

Appellants, Trustees, seek to collect con-
tributions allegedly owed by defendant
Southern Stress Wire Corporation (South-
ern Stress) to their Fringe Benefit Funds
pursuant to the Labor Management Rela-
tions Act of 1947, 29 U.S.C.A. §§ 185 and
186, and the Employment Retirement In-
come Security Act of 1974, 29 U.S.C.A.
§ 1132.

By order dated June 26, 1980, the district
court held that the evidence established the
existence of a pre-hire agreement between
the parties. After its June order, the dis-
trict court several times examined the ques-
tion of whether the union was required to

show that it represented a majority of the workers in the employer's work force in order to convert the pre-hire agreement into a valid collective bargaining contract, binding on Southern Stress. On August 5, 1982, the court noted *McDowell*, a newly issued decision dealing with the majority requirement. *Laborers District Council v. McDowell Contractors*, 680 F.2d 94 (11th Cir.1982). In *McDowell*, the Eleventh Circuit affirmed a district court's holding that in the absence of a showing of union majority at a specific project, the terms of an area-wide pre-hire agreement are not enforceable against the employer with respect to the project in question; if the union cannot enforce the terms of the pre-hire agreement, neither can its pension fund. In this case, Trustees conceded their inability to establish the union's majority status; therefore, the pre-hire agreement could not be converted into an enforceable collective bargaining contract. On August 26, 1982, based on *McDowell*, the court dismissed Trustees' cause.

The United States Supreme Court recently addressed the issue of majority support. *Jim McNeff, Inc. v. Todd*, —— U.S. ——, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). In *McNeff*, the Court distinguished between "an employer's obligation under the Act to bargain with a representative of the majority of its employees and its duty to satisfy lawful contractual obligations that accrued after it enters a pre-hire contract." *McNeff*, —— U.S. at ——, 103 S.Ct. at 1757, 75 L.Ed.2d at 836. Noting that concerns regarding the rights of employees to select their own bargaining representative and the voluntariness of pre-hire agreements are not present, the Court concluded that monetary obligations assumed by construction industry employers under a pre-hire contract authorized by section 8(f) of the National Labor Relations Act may be recovered in a section 301 action despite the fact that the union has not obtained majority support in the relevant unit. Thus, *McNeff* overrules *Laborers District Council*

*v. McDowell Contractors*, upon which the district court based its order of dismissal.

On appeal, Southern Stress argues that the holding in *McNeff* assumes the existence of a valid contract; because the district court erroneously concluded that a valid contract existed between Southern Stress and the union, the district court's dismissal should stand. Although Southern Stress failed to cross-appeal as to the validity of the contract, we may properly consider this point. Absent a cross-appeal, an appellee may not attempt to enlarge his own rights or decrease the rights of his adversary; however, he may advance a matter in the record which is in support of the district court's order, including arguments previously rejected by the district court. *United States v. American Railway Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); *Alford v. City of Lubbock, Texas*, 664 F.2d 1263, 1272–73 (5th Cir.), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982).

The district court's finding that a valid contract existed will not be set aside unless clearly erroneous. *Matthews v. United States*, 713 F.2d 677, 681 (11th Cir. 1983); Fed.R.Civ.P. 52(a). In reviewing this finding, we note that federal courts have liberally applied contract law in determining whether an enforceable labor agreement exists. *See John Wiley & Sons v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964); *Capitol-Husting Co., Inc., v. NLRB*, 671 F.2d 237, 243 (7th Cir.1982); *Pepsi-Cola Bottling Co. v. NLRB*, 659 F.2d 87, 89 (8th Cir.1981). Further, a union and employer's adoption of a pre-hire contract is not dependent on its reduction to writing. *NLRB v. Haberman Construction Co.*, 641 F.2d 351, 355–56 (5th Cir.1981). Instead, conduct manifesting an intention to abide by the terms of an agreement is required. *Id.*, at 356. It is clear from the December 31, 1973, pre-hire agreement with the union that Southern Stress adopted the collective bargaining agreement of August 29, 1968, between the union and the Association of Steel Erectors and Heavy Equipment Operators, Inc.; this specifically bound Southern Stress to the fringe benefits trust.* Further, Southern Stress mani-

* The terms of the agreement between the union and Southern Stress Wire Corp. are as follows:

AGREEMENT OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS

fested an intent to abide by this agreement. The district court found that from December 31, 1973, until early 1979, Southern Stress secured virtually all of its labor from the union hiring hall. Southern Stress's pay to its employees was in conformance with the pay scale established by the collective bargaining agreement. Southern Stress made fringe benefit reports and paid monies to and for the benefit of its employees to the trust fund for hospitalization benefits and frequently for other trust benefits. Trustees conducted at least two audits of Southern Stress's records pursuant to the trust promulgated by the trustees after the passage of the Employee Retirement Income Security Act of 1974. Based on this evidence, we hold that the district court's finding of a valid contract is not clearly erroneous.

Because the precedent on which the district court based its dismissal has been overruled by *McNeff,* we reverse the district court's order and remand for further proceedings.

REVERSED AND REMANDED.

LOCAL # 387 AND UNDERSIGNED EMPLOYER

1. The Undersigned Employer agrees to adopt, abide by and be bound by all of the terms and provisions of the collective bargaining agreement heretofore entered into between Local Union No. 387, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO and the Association of Steel Erectors & Heavy Equipment Operators, Inc. on August 29, 1968, and any modifications, extensions or renewals thereof, including the modification and renewal of October 9, 1972, and the modification and renewal of July 2, 1973, with the same force and effect as though the aforesaid collective bargaining agreement was set forth here in full.

2. The Employer agrees to become a party to and be bound by all the terms and provisions of (a) The Agreement and Declaration of Trust and all amendments thereto of the SOUTHEASTERN IRON WORKERS WELFARE PLAN, and (b) the ATLANTA IRON WORKERS PENSION FUND, LOCAL 387, and (c) the ATLANTA IRON WORKERS JOINT APPRENTICESHIP COMMITTEE, with the same force and effect as though the Agreements and Declarations of Trust; and the Employer agrees to make payments covering all of its employees represented by Local Union No. 387 to the said Plans as required by the stated collective bargaining agreement and all modifications, renewals and amendments thereto, and as required by the Agreements and Declarations of Trust of the aforesaid Plans. The Employer hereby authorizes the Employer Trustees named in the aforesaid *Agreements and Declarations* of Trust, and their successors to act for and on his behalf.

This 31st day of Dec., 1973. [Signatures omitted.]