**ELROD & SONS, INC., Plaintiff,**

v.

**DISTRICT COUNCIL NO. 3 OF the IN-TERNATIONAL BROTHERHOOD OF PAINTERS & ALLIED TRADES, AFL-CIO, CFL, Defendant.**

No. 88–1278–CV–W–9.

United States District Court, W.D. Missouri, W.D.

July 11, 1990.

Daniel L. Epp, James R. Willard, Spencer, Fane, Britt & Browne, Kansas City, Mo., for plaintiff.

Michael T. Manley, Blake & Uhlig, Kansas City, Mo., for defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND VACATING ARBITRATION AWARD AGAINST PLAINTIFF

BARTLETT, District Judge.

Plaintiff Elrod & Sons, Inc. brings this action under § 301 of the Labor Management Relations Act (LMRA), as amended, 29 U.S.C. § 185, to vacate an arbitration award entered on October 4, 1988. Defendant District Council No. 3 of the International Brotherhood of Painters & Allied Trades, AFL–CIO, CFL has filed a Counterclaim for enforcement of the award under § 301. The parties have filed cross-Motions for Summary Judgment.

In its Motion for Summary Judgment, plaintiff argues that the arbitration award is void 1) because plaintiff was not bound by the underlying collective bargaining agreement; 2) because the grievance upon which it was based was untimely filed; and 3) because the grievance was not heard and decided by all eight members of the joint trade board in accordance with the terms of the collective bargaining agreement.

I. *Undisputed Facts*

Plaintiff is a Kansas corporation doing business in Kansas and Missouri as a tenant finish contractor. During the period 1981 to 1988, plaintiff employed painters. Plaintiff also has subcontracted painting

work in the past and does so at the present time. Defendant is a labor organization representing employees in Missouri and Kansas. The Builders Association of Missouri is a multi-employer organization made up of employers engaged in the construction trade in the State of Missouri. Defendant and the builders association have been parties to three successive three-year collective bargaining agreements since 1981.

By stipulation dated August 5, 1981, plaintiff agreed to be bound by the terms of the then current collective bargaining agreement between the Builders Association of Missouri and defendant. By its terms, the three-year pre-hire agreement extended until March 31, 1984, subsequent three-year agreements between defendant and the association were executed in 1984 and 1987.

The 1981–1984 agreement provided for the payment of certain wages and fringe benefits, including union dues, on behalf of employees working within the geographical and craft jurisdiction set forth in the agreement. The 1981–1984 agreement provided that signatory employers, such as plaintiff, were to make contributions on behalf of their employees to the Painters District Council No. 3 Health and Welfare Fund (painters' funds) on a monthly basis. Contributions were to be accompanied by monthly reports setting forth the name and hours worked for each employee on whose behalf contributions were owed.

The 1981–1984 agreement further required signatory employers to maintain workers' compensation and liability insurance for the protection of employees performing work within the geographical and craft jurisdiction of the agreement. The 1981–1984 agreement went on to require signatory employers to notify the painters council of the purchase and/or termination of the insurance coverage required under the contract. The 1981–1984 agreement provided that in the event the union received notification from one of the painters' funds that a signatory employer had failed to make required contributions, the union could, upon one week's notice, direct the employees of such employer to discontinue or refuse to work until all sums due had been paid.

The 1981–1984 agreement further provided for the formation of a joint trade board composed of four members appointed by the builders association and four members appointed by the union with authority to settle all disputes except work jurisdiction disputes between signatory employers and the union that might arise over the interpretation of the agreement. The joint trade board decision was to be final and binding on both parties.

Plaintiff agreed to be bound by all collective bargaining agreements subsequent to the 1981–1984 agreement between defendant and the builders association unless plaintiff gave notice to defendant and its affiliate trust funds of its desire to terminate the stipulation no more than 90 days and no less than 30 days prior to the termination date of the collective bargaining agreement.

On January 5, 1984, plaintiff sent letters to the union and the boards of trustees for the painters' funds that it was terminating its stipulation to the contract effective March 31, 1984. Letters were delivered to Joseph G. Porter (Porter), executive secretary of the union, chairman of the pension fund and secretary of the health and welfare fund. The notices were sent within 90 and no less than 30 days before expiration of the agreement. In its January 5, 1984, notice to the union, plaintiff also stated that it was willing to negotiate individually at a mutually convenient time. Defendant did not respond to this invitation to bargain.

Defendant and the builders association entered into successive three-year agreements beginning April 1, 1984, and April 6, 1987. Plaintiff took no part in any negotiation or ratification of these agreements and did not give any oral or written stipulation to be bound by them.

Plaintiff continued to employ painters after March 31, 1984, paying them at a rate equal to or above the pay scales under subsequent collective bargaining agreements between defendant and the builders

association. Plaintiff also made contributions to the union pension and health and welfare funds for employee hours worked by painters. The successive collective bargaining agreements between the union and the builders association required annual adjustments in both wages and fringe benefit contributions. The union would notify plaintiff by letter of these annual increases and plaintiff would adjust its wages and contribution rate accordingly. Plaintiff continued, subsequent to March 31, 1984, to compile and submit monthly remittance reports to the fringe funds, together with contributions. Plaintiff would correspond with the union regarding fringe benefit payments.

The collective bargaining agreement between the union and the builders association provided for the automatic deduction of membership dues. Subsequent to March 31, 1984, plaintiff continued to deduct and submit dues payments to the union. Furthermore, plaintiff continued to direct that notification of the purchase and/or termination of workers' compensation and liability insurance coverage be sent to the painters council.

On more than one occasion subsequent to March 31, 1984, Porter went to various job sites and directed employees of plaintiff to cease or not begin until such time as plaintiff paid its delinquent contributions. On more than one occasion this action had the effect of totally stopping work on all of plaintiff's projects. On each such occasion, plaintiff would pay the contributions owed and work on the projects would resume.

Following plaintiff's letters terminating its stipulation to the collective bargaining agreement in 1984, defendant repeatedly demanded that plaintiff post a surety bond pursuant to Article II of the 1984–1987 contracts. Plaintiff did not respond to these demands and did not post a bond. During the term of the 1984 contract, plaintiff subcontracted painting jobs to persons and companies that were not parties to the collective bargaining agreements between defendant and the builders association. Article XI of the 1984 and 1987 versions of the collective bargaining agreement required signatory employers to subcontract only to employers who were parties or who agreed to become parties to the agreements.

In 1986, the painters funds conducted an audit of plaintiff's books and records for the period January 1, 1984, through September 30, 1986. During the course of the audit, the funds' auditor, Deborah King (King), discovered payments made to individuals performing painting work whom plaintiff had identified as subcontractors. King met with Porter on April 7, 1987, and advised him of plaintiff's position that it was subcontracting painting work.

In 1987, the painters funds brought suit against plaintiff in the United States District Court for the District of Kansas, *Painters District Council No. 3 Pension Fund, et al. v. Elrod & Sons, Inc., No. 87–2235–0* (Kansas litigation). The funds sought contributions from Elrod on behalf of individuals doing painting work whom Elrod asserted to be subcontractors. It was the position of Elrod that it would make contributions to the fund on behalf of employees, but not subcontractors. In its Memorandum and Order dated June 17, 1988, the court awarded plaintiff contributions on behalf of those found to be employees. Elrod satisfied the judgment shortly thereafter.

On or about June 23, 1988, the union wrote to the builders association invoking the grievance procedure set forth in Article XIII of the collective bargaining agreement. The union alleged that plaintiff had violated the subcontracting clause found in Article XI of the collective bargaining agreement.

Article XIII of the agreement requires that any grievance must be taken up within seven days of the occurrence of the circumstances which gave rise to the grievance, otherwise, the grievance will be considered abandoned. The grievance was filed six days after Judge O'Connor determined which individuals hired by Elrod were employees and who were subcontractors for the purposes of determining fringe benefit contributions. The grievance was brought over one and a half years after the alleged

violations actually occurred and over one year after Porter was told by the funds' auditor that Elrod was subcontracting painters' work.

On August 30, 1988, an arbitration hearing was held concerning the union's grievance. Five members of the joint trade board were present at that hearing, four from the builders association and one from the union. Following presentation of evidence and argument by both parties, the board concluded that Elrod was bound to the collective bargaining agreement and that Elrod had violated the subcontracting clause of the agreement. The board fined Elrod $6,000 as a penalty for this violation. At the hearing, Elrod stated that the arbitrators had no authority to hear or decide the grievance because Elrod was not a signatory to the collective bargaining agreement. Elrod also stated that the grievance was not taken up within seven days of the occurrence of the underlying circumstances and was thus abandoned under the terms of the collective bargaining agreement.

On December 30, 1988, Elrod filed this action to vacate the arbitration award. The union filed a Counterclaim to enforce the award.

## II. *Standard for Summary Judgment*

■ Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried

its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

▮▮▮▮ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

## III. *Discussion*

### A. Plaintiff was not bound by the collective bargaining agreement

▮▮▮ A party may be compelled to submit to arbitration of a grievance only if it has agreed to do so. *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *Kansas City Royals Corp. v. Major League Baseball Players Assn*, 532 F.2d 615, 620 (8th Cir.1976). The question of whether parties have entered into a contract which imposes a duty to arbitrate is an issue to be resolved by the courts. *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

▮▮▮ Plaintiff argues that it was not bound by the April 6, 1987, collective bargaining agreement under which the arbitration award was made because plaintiff timely submitted letters terminating its stipulation to the collective bargaining agreement effective March 31, 1984, did not rescind its letter of termination and did not otherwise agree to be bound by successive collective bargaining agreements.

Defendant argues that by complying with certain terms of the collective bargaining agreement after plaintiff terminated its agreement to be bound by the collective bargaining agreement, plaintiff evidenced an intent to be bound by the April 6, 1987, collective bargaining agreement. Defendant relies on the proposition that "a union employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound.... Instead what is required is conduct manifesting an intention to abide by the terms of an agreement." *NLRB v. Haberman Const. Co.*, 641 F.2d 351, 356 (5th Cir.1981); *Trustees of Atlanta Ironworkers Local 387 Pension Fund v. Southern Stress Wire Corp.*, 724 F.2d 1458 (11th Cir.1983); *Bobbie Brooks, Inc. v. International Ladies Garmet Workers Union*, 835 F.2d 1164 (6th Cir.1987). However, none of these decisions addresses whether, *after* an employer has expressly terminated its agreement to be bound by the collective bargaining agreement, action by the employer in conformity with some of the provisions of the collective bargaining agreement can evidence an intent to be bound again to the collective bargaining agreement.

Plaintiff relies primarily on my earlier decision in *Painters District Council No. 3 Pension Fund v. Johnson*, 566 F.Supp. 592 (W.D.Mo.1983) and on *McLean County Roofing*, 290 NLRB No. 82, 131 LRRM 1126 (1988) in support of its position that *after* an employer has expressly and unambiguously rejected a collective bargaining agreement, conduct consistent with the terms of a portion of the agreement does not demonstrate an intent to be bound by the agreement.

In *Johnson*, I held that once an employee manifests an intent to void or repudiate a collective bargaining agreement, subsequent payments of fringe benefit contributions for union employees do not rebind the employer to the collective bargaining agreement. Subsequent to my decision in *Johnson*, the Third Circuit Court of Appeals held that an employer is barred from rejecting a pre-hire agreement *during its term*. *John Deklewa & Sons*, 282 NLRB

No. 184 (1987), aff'd 843 F.2d 770 (3rd Cir.1988).

In the instant case, however, the plaintiff employer terminated its agreement to be bound by the collective bargaining agreement in the manner provided in the stipulation. Plaintiff's termination was effective on the date the collective bargaining agreement expired. Therefore, plaintiff's actions were consistent with *Deklewa;* plaintiff effectively terminated its agreement to be bound by the collective bargaining agreement.

In *McLean County Roofing*, an employer, following the expiration of a collective bargaining agreement, acted consistently with some provisions of the agreement. On the other hand, the employer acted inconsistently with the conclusion that it intended to be bound by the collective bargaining agreement, e.g., the employer refused to sign a successor agreement. The NLRB concluded:

> The Respondent's statement that it would not sign the contract because "it couldn't live by the whole thing," the omission of a termination date, and the failure to sign the contract show that the parties never entered into a collective-bargaining agreement. *That the respondent substantially followed most of the provisions of the agreement is not a substitute for a voluntary agreement on all material terms which is binding on the parties.*

*Id.* at 1128 (emphasis added).

In this case, after terminating its agreement to be bound by the collective bargaining agreement on March 31, 1984, plaintiff acted consistently with some of the terms of the 1984–1987 collective bargaining agreements between defendant and the builders association. For instance, plaintiff paid wages at or above union scale, made contributions to the union fringe benefits fund, withheld union dues from union employees' checks, supplied verification of its insurance, did not assert a defense of no agreement to pay contributions for fringe benefit contributions when sued by the funds and did not protest work stoppages conducted by its employees to induce plaintiff to make contributions to the fringe benefit funds.

However, this conduct is not consistent only with a desire to be rebound to the collective bargaining agreement. For instance, plaintiff asserts that it believed that paying wages at or above union scale and paying fringe benefit contributions assured it better quality employees.

Furthermore, during the same period, plaintiff was acting inconsistently with the terms of the 1984–87 collective bargaining agreement. For instance, plaintiff refused repeated demands by the union to post a surety bond, subcontracted painters' work to contractors who were not signatories to the collective bargaining agreement in violation of the terms of that agreement, contested the jurisdiction of arbitrators to hear a grievance brought by the union and requested the opportunity to bargain individually with the union.

Plaintiff lawfully terminated its agreement to be bound by the collective bargaining agreement. Having expressly stated its intent not to be bound by the terms of the collective bargaining agreement, plaintiff's subsequent conduct consistent with some but not all material terms of the succeeding collective bargaining agreement does not demonstrate an intent to be rebound to the collective bargaining agreement.

Therefore, the arbitration award pertaining to events occurring after plaintiff lawfully terminated its agreement to be bound by the collective bargaining agreement is void because the arbitrators had no authority to render a decision and award against plaintiff. *See Gateway Coal,* 94 S.Ct. at 635.

Accordingly, it is hereby ORDERED that:

1) plaintiff's Motion for Summary Judgment is granted;

2) defendant's Motion for Summary Judgment is denied; and

3) the arbitration decision and award against plaintiff is vacated and will not be enforced.