**GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al., Plaintiffs,**

v.

**DON RICHARDSON CONCRETE COMPANY, Defendant.**

No. 90–0488–C–5.

United States District Court, E.D. Missouri, E.D.

Oct. 24, 1991.

Clyde E. Craig, Brian A. Spector, Craig and Craig, St. Louis, Mo., for plaintiffs.

Gene J. Brockland, Caruthers, Herzog, Crebs & McGhee, St. Louis, Mo., for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiffs filed this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 151 *et seq.* ("LMRA"). Plaintiffs seek to recover from defendant amounts allegedly due employee welfare, pension and training benefit funds pursuant to the terms of a collective bargaining agreement. This action was tried before the Court on July 3, 1991. The Court, having considered the pleadings, testimony of witnesses, and documents admitted into evidence hereby makes the following findings of fact and conclusions of law as required by Fed.R.Civ.P. 52.

### I. *Findings of Fact*

Defendant Don Richardson Concrete Company ("DRCC") is a general contracting company that has been in business since 1972. Don Richardson is the owner

and president of DRCC. Lou Ann Richardson, the wife of Don Richardson, is the vice president of DRCC. On August 13, 1985 Don Richardson, as president of DRCC, executed a short form agreement that incorporated the terms of a collective bargaining agreement effective May 1, 1983 to May 1, 1986 (the "1983–1986 Agreement"). The 1983–1986 Agreement was negotiated by the Associated General Contractors of St. Louis and the following unions: Local Unions Nos. 42, 53, 110, and the Eastern Missouri Laborers' District Council Laborers' International Union of North America, AFL–CIO (the "Unions"). The 1983–1986 Agreement set forth the wage rates for covered employees and the contributions that employers were required to make per covered employee hour to employee welfare, pension, and training funds. In Article 13, Section 13.01 the 1983–1986 Agreement set forth the termination rights of employers that are members of the Associated General Contractors of St. Louis:

> This Agreement shall be effective and binding upon the parties from the date hereof until the first day of May, 1986. This Agreement shall be automatically renewed for additional periods of one (1) year each, from year to year, from and after the termination of the original term of this Agreement, or any subsequent year for which the Agreement is in force, unless at least sixty (60) days of the termination of any renewal thereof from time to time, either the Employer or the Union gives the other written notice of its intention to terminate, amend, or modify the Agreement. Within thirty (30) days after any such notice is received, a committee of representatives of the respective parties hereto shall meet and endeavor to come to an agreement on any matters in issue, and during the negotiations that follow with respect thereto there shall be no strike or stoppage of work.

DRCC is not a member of the Associated General Contractors of St. Louis. The termination rights of DRCC were specifically set forth in the short form agreement directly above the place where DRCC executed the short form agreement:

> FOR USE BY CONTRACTORS NOT MEMBERS OF ASSOCIATED GENERAL CONTRACTORS OF ST. LOUIS

> The undersigned hereby agrees with the Union to accept and be bound by all of the foregoing Agreement, and also agrees to be bound by all renewals, changes or extensions thereto made by the original parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date.

For the period between August, 1985 and April, 1986 DRCC submitted reports of covered employee hours and paid contributions to the employee welfare, pension, and training funds.

In 1986 the Associated General Contractors of St. Louis and the Unions executed a collective bargaining agreement effective May 1, 1986 to April 30, 1989 (the "1986–1989 Agreement"). Although DRCC did not execute the 1986–1989 Agreement, DRCC submitted reports of covered employee hours and paid contributions to the employee welfare, pension, and training funds during the period of its effectiveness.

In 1989 the Associated General Contractors and the Unions executed collective bargaining agreement effective May 1, 1989 to April 30, 1992 (the "1989–1992 Agreement"). DRCC did not execute this agreement. In April, 1989 DRCC ceased submitting reports and ceased paying contributions to the employee welfare, pension, and training funds.

On March 15, 1990 plaintiffs filed this action seeking unpaid employee welfare, pension and training benefit funds pursuant to the terms of the 1989–1992 Agreement. On June 19, 1990 Don Richardson, as president of DRCC, sent by certified mail the following letter to Local Unions 42, 53, and 110:

Notice is hereby given by Don Richardson Concrete Co., a Missouri corporation, that the Union Agreement for the period commencing May 1, 1983, which has been automatically extended from year to year after its initial termination date on the 1st day of May, 1986, is hereby terminated.

In accordance with Article XIII, of said Agreement, the company will negotiate for the purpose of reaching a new Agreement.

Even though it is the position of Don Richardson Concrete Co. that it is not a party to, nor is it subject to the Agreement for the period of May 1, 1986, through April 30, 1989, in the event that it is determined that this company is obligated under such Agreement, notice is hereby given, under Section 1301 of such Agreement, of termination and of the company willingness to negotiate.

On July 19, 1990 plaintiffs served upon defendant a document production request seeking discovery of defendant's payroll and employee time records. Defendant did not respond to plaintiffs' discovery request in the time provided by the Federal Rules of Civil Procedure. In November, 1990 the records were destroyed in a fire.[1]

The payroll and employee time records were necessary in order to accurately determine the amount of unpaid contributions allegedly owed by defendant. After the records were destroyed in a fire, plaintiffs were compelled to perform an audit without the benefit of these essential documents. Plaintiffs retained Chris Madison, an audit manager at a certified public accounting firm, to determine the amount of unpaid contributions owed by defendant. Mr. Madison determined the hours worked by each employee of defendant by dividing the gross earnings of each employee by the contract wage rate during that period. Mr. Madison then compared the hours reported for each employee by defendant to the hours worked by each employee according to his audit.

Defendant criticizes Mr. Madison's audit as inaccurate. First, Mr. Madison assumed all employees of defendant were laborers covered under the collective bargaining agreement although some employees were not laborers and some laborers performed work not covered by the agreements. Second, Mr. Madison assumed that all hours were worked at the contract rate. Mr. Madison did not take into account that some employees worked overtime at a higher rate than the normal contract rate. Also, Mr. Madison did not take into account that an employee might be paid at a higher rate than the contract rate.[2] Mr. Madison's failure to take into account overtime and other deviations from the standard contract rate would tend to overestimate the number of unreported hours, and would tend to overestimate defendant's liability for unpaid contributions.

## II. Conclusions of Law

### A. Liability

 "[I]t is clear that a signatory to a Short Form Agreement can agree to be bound by future modifications, extensions, and renewals of a [collective bargaining agreement]." *Construction Teamsters Health & Welfare Trust v. Con Form Construction Corp.*, 657 F.2d 1101, 1103 (9th Cir.1981) *("Con Form")*. Thus, the issue before the Court is whether the short form agreement signed by defendant that incorporated the provisions of the 1983–1986 Agreement bound defendant to the 1986–1989 Agreement and the 1989–1992 Agreement. The short form agreement provided:

The undersigned hereby agrees with the Union to accept and be bound by all of the foregoing Agreement, and also agrees to be bound by all *renewals,*

---

**1.** Don Richardson testified that he moved the records from the basement of his house to a woodshed. Don Richardson's father-in-law inadvertently set fire to the woodshed and destroyed the records.

**2.** Don Richardson testified that employee Mark Boyer was paid $0.50 per hour over the contract rate. Lou Ann Richardson testified that Mark Boyer was paid $1.00 per hour over the contract rate. The discrepancy is remarkable given that both Don and Lou Ann were present during each other's testimony.

*changes* or *extensions* thereto made by the original parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date.

The foregoing terms expressly state that defendant agreed to be bound by all renewals, changes, or extensions to the 1983–1986 Agreement unless and until defendant gave timely notice of termination. Plaintiffs argued that the 1986–1989 Agreement and 1989–1992 Agreement are renewals, changes, or extensions of the 1983–1986 Agreement. The Court agrees. The Court has reviewed the text of the three agreements and concludes that the 1986–1989 Agreement and the 1989–1992 Agreement are fairly construed as changes or extensions of the 1983–1986 Agreement. First, the provisions of the subsequent agreements are substantially similar to that of the 1983–1986 Agreement. Second, there was no gap between the expiration of one agreement and the effective date of the subsequent agreement. For example, the 1986–1989 Agreement became effective on the date that the 1983–1986 Agreement expired.

Furthermore, defendant's conduct indicates that it intended to be bound by collective bargaining agreements enacted subsequent to the 1983–1986 Agreement. A labor agreement may be adopted through conduct manifesting an intention to be bound. *Fireman's Fund Insurance Co. v. Waste Management of Wisconsin, Inc.,* 777 F.2d 366, 373 (7th Cir.1985); *Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. Southern Stress Wire Corp.,* 724 F.2d 1458, 1459 (11th Cir.1983). Although the 1983–1986 Agreement expired on May 1, 1986, defendant continued to submit reports and pay contributions until April, 1989. The reports submitted by defendant state, above the line where Lou Ann Richardson signed: "The undersigned employer hereby certifies (a) that it is signatory to a current collective bargaining agreement." Defendant paid wages and contributions at the rates set forth for each year in the 1986–1989 Agreement. Lou Ann Richardson testified that she tele-

phoned plaintiffs at the beginning of each contract year to obtain information on the current wage and contribution rates. The Court finds that defendant's conduct in continuing to pay contributions through April, 1989 at the rates set forth in the 1986–1989 Agreement is persuasive evidence of defendant's intent to be bound by collective bargaining agreements executed subsequent to the 1983–1986 Agreement. *Con Form, supra,* 657 F.2d at 1103.

Defendant argued that it is not bound by the 1986–1989 Agreement and 1989–1992 Agreement because it never executed those agreements. Instead, defendant suggests that the 1983–1986 Agreement automatically renewed itself for one year terms beginning on May 1, 1986 until April, 1990, when defendant timely terminated its obligations under the 1983–1986 Agreement. The short form agreement, however, is not limited to binding defendant to automatic renewals of the 1983–1986 Agreement. The short form agreement also binded defendant to changes and extensions of the 1983–1986 Agreement. As was discussed *supra,* the 1983–1986 Agreement was not automatically renewed for periods of one year, but was changed and extended by the 1986–1989 Agreement and 1989–1992 Agreement.

▮ Defendant asserts that under Article 13, Section 13.01 of the 1983–1986 Agreement it gave timely notice of termination on July 19, 1990 for the 1983–1986 Agreement that was automatically renewed on May 1, 1990. The termination provision of Article 13, Section 13.01 of the 1983–1986 Agreement does not apply for two reasons. First, as was discussed *supra* the 1983–1986 Agreement was not automatically renewed on May 1, 1990. Instead, the 1983–1986 Agreement was replaced by subsequent collective bargaining agreements in May, 1986 and May, 1989. Second, the provisions of the short form agreement, and not Article 13, Section 13.01 of the 1983–1986 Agreement, set forth the terms under which defendant must give notice of termination. Under the short form agreement defendant was required to give notice of termination "not less than sixty (60)

days nor more than ninety (90) days *prior* to any termination date." (Emphasis added.) Because defendant did not give notice of termination until June 19, 1990, which was after the termination date, defendant's notice was untimely.

In sum, the language of the short form agreement bound defendant to subsequent collective bargaining agreements unless defendant properly terminated. Defendant was required by the terms of the short form agreement to give notice of termination not less than sixty days nor more than ninety (90) days prior to any termination date. The 1986–1989 Agreement terminated on May 1, 1989. Defendant did not provide notice of termination until June 19, 1990. Therefore, defendant is bound by the 1989–1992 Agreement and is liable for contributions to the employee welfare, pension, and training funds.

### B. Damages

■ First, defendant asserts that the audit performed by Chris Madison is woefully inaccurate and should not be utilized by the Court to calculate the amount of unpaid contributions. The Court recognizes that the audit contains inaccuracies. However, the audit is a reasonable determination of the extent of defendant's liability given that the payroll and employee time records necessary to conduct a more accurate audit were destroyed while in defendant's custody. If defendant had responded in a timely manner to plaintiffs' discovery request, plaintiffs would have had the means to perform a more accurate audit. The Court will not permit defendant to reduce its liability by alluding to inaccuracies when the fault for the inaccuracies lies squarely in defendant's lap.

■ Defendant criticized Chris Madison, the auditor, for not interviewing employees of defendant during the audit to determine whether they performed labor not covered by the agreements. Defendant, however, did not call any of these employees to testify in court as to the type of work they performed for defendant. Defendant also did not introduce the deposition testimony of these employees or the affidavits of these employees to contravene Mr. Madison's assumptions. Instead, the Court only heard the testimony of Don Richardson as to whether several of defendant's employees did work covered under the agreements. The testimony of Don Richardson on this issue, without any corroboration, is not sufficient for the Court to disregard the results of the audit on the basis of alleged inaccuracies.

■ Second, defendant asserts that it should not be liable for liquidated damages, interest, and attorney's fees because it attempted to submit reports after April, 1989 but plaintiffs refused to accept the reports because there was no collective bargaining agreement between the parties.[3] The Court does not recall any testimony from either Don Richardson or Lou Ann Richardson on this issue. The Court recalls defendant's counsel mentioning this topic during the pretrial conference. When neither Don Richardson nor Lou Ann Richardson testified about their thwarted attempts to submit reports and pay contributions after April, 1989, the Court assumed that defendant had abandoned this argument. The Court addresses the argument because it reappeared in defendant's post-trial brief.

The Court considers defendant's assertion to be without merit. First, Bernard DiFani, accountant for the employee benefit plans, testified credibly that plaintiffs neither refused nor received any reports or contributions from defendant after April, 1989. Second, it has been the position of plaintiffs that defendant is bound by the 1989–1992 Agreement because it never properly gave notice of termination in accordance with the short form agreement. Therefore, plaintiffs would not have refused reports and contributions on the ground that there was no collective bargaining agreement in effect between the parties.

**3.** In May, 1989 defendant received a letter from the Construction Laborers Benefit Office that stated:

> If your Collective Bargaining Agreement has expired, we will not accept a report unless a new Agreement, or Interim Agreement has been signed.

For the foregoing reasons, the Court awards plaintiffs $58,460.78 in unpaid contributions, penalties, and interest, $1,060.52 in costs (including the cost of the audit), and $3,036.35 in attorney's fees.