194 F.3d 351 (2nd Cir. 1999)
 JOHNNIE BROWN, THEODORE KING, ALDO COLUSSI, GEORGE FINCH, CHESTER BROMAN, JOSEPH FERRARA, FRANK FINKEL, and ANIELLO MADONNA, as Trustees and Fiduciaries of the Local 282 Welfare, Pension Annuity and Job Training Trust Funds, Plaintiffs-Appellees,
v.
C. VOLANTE CORP., Defendant-Appellant.
 Docket No. 99-7109
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: September 24, 1999
Decided: October 08, 1999
 
 Appeal from orders entered in the United States District Court for the Eastern District of New York (Nina Gershon, Judge) granting appellees' motion for summary judgment and awarding damages to appellees. We hold that the district court had subject matter jurisdiction over appellees' claims for an employer's breach of adopted collective bargaining agreements to contribute to a trust fund.
 STACEY E. ZISKIN, Law Offices of Robert M. Ziskin (Robert M. Ziskin, of counsel), Commack, New York, for Defendant-Appellant.
 EUGENE S. FRIEDMAN, Friedman & Levine (William K. Wolf, Michael Bauman, William Anspach, of counsel), New York, New York, for Plaintiffs-Appellees.
 Before: WINTER, Chief Judge, KEARSE, and McLAUGHLIN, Circuit Judges.
 WINTER, Chief Judge:
 
 
 1
 C. Volante Corp. appeals from Judge Gershon's orders granting appellees' motion for summary judgment and awarding damages. Appellant argues that: (i) the district court lacked subject matter jurisdiction over appellees' claims because they arose from an alleged breach of unsigned collective bargaining agreements, (ii) the district court erred in determining that there were no triable issues as to whether appellant manifested its intent to adopt unsigned collective bargaining agreements, and (iii) the district court made several erroneous findings in connection with its damages award. We affirm.
 
 BACKGROUND
 
 2
 Appellant is a New York truck rental company. Appellees are the Trustees of the Local 282 Welfare, Pension Annuity and Job Training Trust Funds (the "Fund"), which were established pursuant to collective bargaining agreements ("CBA") between Building Material Local 282 of the International Brotherhood of Teamsters (the "Union") and various employers.
 
 
 3
 Appellant was a signatory to a CBA in effect from July 1, 1987 to June 30, 1990. It did not, however, sign two subsequent CBAs, governing the period July 1, 1990 to June 30, 1996. Pursuant to all the CBAs, employers agree to contribute a fixed dollar amount to the Fund contingent upon the number of hours its employees work.
 
 
 4
 Although appellant did not sign the CBAs effective from July 1, 1990 to June 30, 1996, it submitted monthly remittance reports during this period. These sixty-one reports detailed hours worked by appellant's employees and its contributions to the Fund as determined by the hours worked. Each report was accompanied by the payment calculated in the report. Each of the reports was signed by appellant's then-Chief Executive Officer as "Pres.," and most of them contained a typewritten phrase indicating it was submitted "[i]n Accordance with the terms of the standard Industry Agreement with Local 282, I.B.T."
 
 
 5
 The parties do not dispute that appellant's payments to the Fund accorded with the rates set forth in the operative CBA. Rather, the Trustees' claim stems from appellant's alleged failure to make payments to the Fund for all of its employees.
 
 
 6
 The Trust Agreement, incorporated by reference in the CBAs, provides for periodic auditing of an employer's records concerning payments to the Fund. During November and December, 1993, the Trustees conducted an audit of appellant's records covering the period from May 30, 1990 through September 30, 1993. Appellant cooperated in this audit even though most of it concerned months during which appellant was not a signatory to a CBA. The Trustees' resulting audit report showed that appellant owed more than $78,000.00 to the Fund.
 
 
 7
 After receiving the audit report, Rita Volante wrote to the Trustees on appellant's behalf. She framed the "main issue" as whether appellant owed contributions for work done by "outside trucks" and noted that "we were under the assumption that they were paying their own union benefits." Volante did not dispute that appellant had an obligation to make payments to the Fund or that it owed contributions for the outside work. Instead, she expressly acknowledged "a responsibility to the funds" that "[w]e are not skirting." Nevertheless, Volante offered only $35,000.00 as the amount appellant could afford and noted, as a thought for consideration, that appellant had not signed a CBA since 1989.
 
 
 8
 The Trustees rejected appellant's offer and brought the instant suit. Appellant thereafter moved to dismiss the action for lack of subject matter jurisdiction, and appellee moved for summary judgment. Judge Gershon denied appellant's motion to dismiss, granted appellees' summary judgment motion, and referred the case to Magistrate Judge Pohorelsky for an inquest. In a December 22, 1998 Memorandum and Order, Judge Gershon adopted Magistrate Judge Pohorelsky's recommendation to award appellees $248,514.03 in damages, interest, attorney's fees and costs. This appeal followed.
 
 DISCUSSION
 
 9
 a) Subject Matter Jurisdiction
 
 
 10
 Relying on Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539 (1988), appellant argues that the district court lacked subject matter jurisdiction over the Trustees' claims for benefit fund contributions owing on work performed during a period when appellant was not bound by a collective bargaining agreement. We disagree.
 
 
 11
 The Trustees brought the instant claims pursuant to Sections 502(g)(2) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(g)(2), 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185. In Advanced Lightweight, the Supreme Court held that ERISA Sections 502(g)(2) and 515 do not confer subject matter jurisdiction over claims "to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the [National Labor Relations Act]." 484 U.S. at 549. According to the Court, Sections 502(g)(2) and 515 confer jurisdiction only over claims for "promised contributions," not over unfair labor practice claims that an employer has refused to bargain in good faith by failing to make postcontract benefit plan contributions before negotiations for a new contract reached an impasse. See Advanced Lightweight, 484 U.S. at 548-49. The decision, therefore, stands only for the unremarkable proposition that the National Labor Relations Board generally has exclusive jurisdiction over unfair labor practice claims. See NLRB v. Katz, 369 U.S. 736, 743 (1962) (holding that employer's failure to honor terms of expired CBA during negotiations on new CBA constitutes unfair labor practice); Advanced Lightweight, 484 U.S. at 543 n.4 ("As a general rule, federal courts do not have jurisdiction over" unfair labor practice claims.) (internal quotation marks omitted); but see id. (noting that federal courts have jurisdiction over unfair labor practice claims that are "collateral" to claims over which there is an independent basis for jurisdiction).
 
 
 12
 Although it is true that the Trustees' claims arise from appellant's alleged failure to contribute to the Fund after the signed CBA expired, this does not render them per se unfair labor practice claims over which the district court lacks jurisdiction under Advanced Lightweight. The Trustees are not arguing that appellant has unlawfully refused to bargain by making unilateral changes in working conditions before reaching an impasse over a new CBA. Rather, the Trustees claim that appellant promised to contribute to the Fund by adopting the two CBAs that it never signed. Appellees' claims are thus clearly for "contributions [owing] in accordance with the terms and conditions of . . . [a collective bargaining] agreement," 29 U.S.C. 1145, and "violation[s] of contracts between an employer and a labor organization," 29 U.S.C. 185(a), over which the district court has jurisdiction. See Advanced Lightweight, 484 U.S. at 547 ("The liability created by 515 may be enforced by the trustees of a plan by bringing an action in federal district court . . . ."); 29 U.S.C. 185(a).
 
 
 13
 b) Summary Judgment
 
 
 14
 Appellant next argues that the district court improperly granted summary judgment because there are genuine issues of fact as to whether appellant adopted the two unsigned CBAs. We disagree.
 
 
 15
 We review the grant of summary judgment de novo. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 20203 (2d Cir. 1995). A moving party is entitled to summary judgment when, after reviewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998). A dispute is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 16
 The Trustees satisfied their initial burden to demonstrate the absence of a genuine issue of material fact as to whether appellant adopted the two unsigned CBAs. See FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (noting that "[a] movant for summary judgment 'always bears' . . . 'the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact'") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The sixty-one remittance reports -- most of which were expressly submitted "[i]n accordance with the terms of" the CBAs -- appellant's cooperation with the audit, its payment of union wages to employees, and Volante's letter to the Trustees acknowledging appellant's "responsibility to the funds," are sufficient, absent contrary evidence, to establish as a matter of law appellant's intent to adopt the two unsigned CBAs. See, e.g., Robbins v. Lynch, 836 F.2d 330, 332 (7th Cir. 1988) (granting summary judgment to trustee of funds on claim that employer breached adopted agreement; noting, among other things, that employer "paid the union scale . . . and paid (some) pension and welfare contributions"); Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. Southern Stress Wire Corp., 724 F.2d 1458, 1459-60 (11th Cir. 1983) (per curiam) (upholding finding that employer adopted CBA and agreement to contribute to benefit fund; noting employer's payment of union wages, submission of benefit reports, and accession to audit).
 
 
 17
 Appellant argues that the unsigned CBAs do not satisfy the ERISA Section 302(c)(5)(B) requirement that payments to a trust fund be made pursuant to a "written agreement with the employer." 29 U.S.C. 186(c)(5)(B). According to appellant, it did not make a "written agreement" to contribute to the Fund after June 30, 1990 because it did not sign the two subsequent CBAs. Appellant's argument, however, overlooks the statutory language. Section 302(c)(5)(B) does not require that an agreement be signed, only that it be "written" and set forth "a detailed basis on which . . . payments are to be made" to a trust fund. Id. Accordingly, an unsigned, written agreement satisfies Section 302(c)(5)(B)'s "written agreement" requirement.[1] See Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 375 (7th Cir. 1985) (concluding that a "signed, unexpired collective bargaining agreement between the parties is not required to satisfy section 302(c)(5)(B); rather section 302(c)(5)(B) requires only a 'written agreement'").
 
 
 18
 Because there is no dispute that the unsigned CBAs set forth a sufficiently detailed basis on which the payments were to be made, the only question is whether appellant's conduct manifested an intent to adopt, or agree to, the unsigned CBAs. 29 U.S.C. 186(c)(5)(B); see also Baskin v. Hawley, 807 F.2d 1120, 1128-29 (2d Cir. 1986) (upholding jury verdict premised on finding that employer's conduct manifested adoption of CBA); Moriarty v. Larry G. Lewis Funeral Dirs. Ltd., 150 F.3d 773, 777 (7th Cir. 1998) ("Both 302(c)(5)(B) and general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing . . . a signature at the bottom of the collective bargaining agreement itself is unnecessary."); Southern Stress Wire Corp., 724 F.2d at 1459-60.
 
 
 19
 As noted above, the Trustees' proffer, absent rebuttal, suffices to show adoption of the CBAs as a matter of law. In response, appellant contends, first, that it did not actually comply with the CBA provisions requiring it to contribute to the Fund. However, appellant concedes that, for the period covered by the audit, it contributed to the Fund at the rate prescribed by the unsigned CBAs. Even with regard to contributions for the "outside" drivers it hired -- the issue in this case -- Volante's letter to the Trustees manifests appellant's understanding that it was bound to contribute to the Fund on behalf of these employees. The Volante letter thus not only fails to create a genuine issue as to liability, but actually tends to establish adoption of the unsigned CBAs.
 
 
 20
 Appellant also relies on an affidavit stating that it did not pay its employees' wages based on the CBA but on information supplied to it by one of its customers. There is no dispute, however, that appellant paid its employees the wage scales set forth in the unsigned CBAs. Similarly, appellant's argument on appeal that it did not post a bond in the amount required by the CBAs is unsupported by any evidence. Neither of these arguments therefore suffices to create a genuine issue of material fact.
 
 
 21
 Finally, appellant points to a letter from the Union requesting that appellant sign the 1990-1993 and 1993-1996 CBAs. The letter began by stating "we are aware that your dues and benefit contributions are paid timely and to date" but informed appellant that it could not process a Union book for one of appellant's new employees until the CBAs were signed. This letter states, however, only what is undisputed -- that the CBAs are unsigned. It does not undercut appellant's conduct indicating that it intended to be bound by the unsigned CBAs.[2]
 
 
 22
 Moreover, that appellant subsequently hired the employee whom the Union declined to admit as a member does not, in these circumstances, create a genuine issue of material fact. Appellant's hiring of this non-Union employee may have breached the CBAs, but appellant proceeded to contribute to the Fund on behalf of this employee, thus further manifesting its intent to be bound by the CBAs' trust fund provisions.
 
 
 23
 Appellant has not, therefore, demonstrated the existence of a genuine issue of material fact as to whether its conduct manifested an intent to adopt the unsigned CBAs.
 
 
 24
 c) Damages
 
 
 25
 Having carefully reviewed the record at the inquest, Magistrate Judge Pohorelsky's final report and recommendation, and Judge Gershon's decision adopting that report, we find no clear error in the district court's findings in connection with its damages award.
 
 
 26
 Appellant makes three principal challenges to the district court's findings in connection with its damages award, which we address in turn. We review these findings for clear error. See Fed. R. Civ. P. 52(a); United States Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 697 (2d Cir. 1991).
 
 
 27
 First, appellant argues that the district court erred in crediting the auditor's assumptions that work performed by two employees in 1992 was "covered work" -- work for which appellant owed contributions to the Fund. The district court was warranted in crediting this assumption, however, because appellant made contributions for these same employees during 1993 and the employees' wages for this work in 1992 were comparable to their 1993 wages.
 
 
 28
 Second, appellant argues that the district court should have discredited the auditor's testimony that appellant was not "double billed" for these employees' work. Appellant points to the auditor's testimony that he could not be sure, at the time of the hearing, whether he double billed hours. In this same hearing, however, the auditor testified that his recollection was that, at the time he prepared the report, he deducted any hours for which appellant had already contributed to the Fund in accordance with the auditor's usual practice. The district court did not clearly err in finding this recollection credible.
 
 
 29
 Finally, appellant argues that the auditor unreasonably considered subcontracted employees' work as covered work, even though the CBA requires the Union to give an employer notice of its obligation to make contributions to the Fund for subcontracted employees' work. The problem with this argument is that it is only an argument, not supported by any evidence that the employees at issue were actually subcontracted. Moreover, appellant's argument is based on a selective reading of the CBA. The relevant provision requires, first, that appellant notify the Union "on a weekly basis . . . of the hours worked by" outside drivers. If the outside drivers' employer does not make the requisite contributions to the Fund, then the Union is required to notify appellant of its obligation to contribute on the outside drivers' behalf. Appellant presented no evidence at the damages hearing that it notified the Union of its employment of outside drivers. Appellant cannot, accordingly, invoke the protection of the above-quoted CBA provision, and the district court did not err in crediting the auditor's testimony that appellant owed contributions for these employees' work.
 
 
 30
 Accordingly, we affirm the district court's damages award.
 
 CONCLUSION
 
 31
 We therefore affirm.
 
 
 
 Notes:
 
 
 [1]
 Our decision in Moglia v. Geoghegan, 403 F.2d 110 (2d Cir. 1968), is not to the contrary. There, we held that an unsigned, written agreement between a union and a trust fund did not comply with Section 302(c)(5)(B) when the union and the trust fund "never" had a signed CBA detailing the basis upon which payments were to be made. 403 F.2d at 114, 115. We rejected a putative beneficiary's argument that its employer adopted the unsigned agreement because, on the facts of that case, the employer "did not appear to be willing to accept [the] terms [of the unsigned CBA] at any time." Id. at 118. We did not, however, graft a signature requirement onto Section 302(c)(5)(B). Unlike the employer in Moglia, appellant's conduct manifested an intent to adopt the terms of the unsigned CBAs.
 
 
 [2]
 Similarly, Volante's letter to the Trustees, in which she noted as a "thought[] for . . . consideration" that appellant had not been a signatory to a CBA since 1989, does not undermine the evidence of appellant's intent to adopt the unsigned CBAs but points out only the undisputed fact that the two CBAs effective from July 1, 1990 to June 30, 1996 were not signed by appellant.