PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 13-2403

_____

THE TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL
PENSION FUND,

                Plaintiff – Appellee,

        v.

PLUMBING SERVICES, INC.; PSI MECHANICAL, INC.,

                Defendants – Appellants.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  T. S. Ellis, III, Senior
District Judge.  (1:13-cv-00118-TSE-JFA)

_____

Argued:  January 27, 2015                Decided:  June 29, 2015

_____

Before MOTZ and DIAZ, Circuit Judges, and DAVIS, Senior Circuit
Judge.

_____

Affirmed by published opinion.  Judge Diaz wrote the opinion, in
which Judge Motz and Senior Judge Davis joined.

_____

**ARGUED**: Gregory F. Yaghmai, RUTLEDGE & YAGHMAI, Birmingham,
Alabama, for Appellants.  Dinah S. Leventhal, O'DONOGHUE &
O'DONOGHUE LLP, Washington, D.C., for Appellee.  **ON BRIEF**: John
R. Harney, O'DONOGHUE & O'DONOGHUE LLP, Washington, D.C., for
Appellee.

_____

DIAZ, Circuit Judge:

For nearly thirteen years, Plumbing Services, Inc. ("PSI") made contributions to the Plumbers and Pipefitters National Pension Fund (the "Fund"), a multiemployer pension benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (2012). On March 10, 2011, however, PSI stopped contributing to the Fund. The Fund, in turn, informed PSI that it (and its successor entity, PSI Mechanical, Inc., collectively "Defendants") owed "withdrawal liability" pursuant to 29 U.S.C. § 1381. When Defendants failed to pay the sum owed, the Fund filed suit.

Defendants moved to dismiss the action on the ground that the district court did not have personal jurisdiction over them. In the alternative, they sought a change in venue. The district court denied both motions. On the merits, Defendants claimed that PSI never agreed to be bound by an existing collective bargaining agreement requiring participating employers to make contributions to the Fund. The district court disagreed, and granted the Fund's motion for summary judgment. Because we find that (1) the district court had personal and subject matter jurisdiction, (2) venue was proper in Virginia, and (3) PSI bound itself to make contributions to the Fund, we affirm.

I.

A.

We begin by briefly setting out the relevant statutory framework. Congress enacted ERISA to promote the "soundness and stability of [employee benefit] plans" in private industry. 29 U.S.C. § 1001(a). Specifically, ERISA protects "the interests of employees and their beneficiaries" by establishing "minimum standards . . . assuring the equitable character of such plans and their financial soundness." Id. To further that end, Congress in 1980 passed the Multiemployer Pension Plan Amendments Act (the "MPPAA"). In part, the MPPAA

> requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan. This withdrawal liability is the employer's proportionate share of the plan's "unfunded vested benefits," calculated as the difference between the present value of vested benefits and the current value of the plan's assets.

Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 725 (1984) (citing 29 U.S.C. §§ 1381, 1391). The purpose of assessing withdrawal liability is "to assign to the withdrawing employer a portion of the plan's unfunded obligations in rough proportion to that employer's relative participation in the plan over the last 5 to 10 years." Borden, Inc. v. Bakery & Confectionary Union & Indus. Int'l Pension, 974 F.2d 528, 530 (4th Cir. 1992).

3

An employer owes withdrawal liability when it makes a complete or partial withdrawal from a pension plan. 29 U.S.C. § 1381(a). In the building and construction industry, a complete withdrawal occurs when: (1) "an employer ceases to have an obligation to contribute under the plan, and" (2) the employer "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required." 29 U.S.C. § 1383(b)(2). ERISA treats all trades or businesses that are under common control as a single employer. 29 U.S.C. § 1301(b)(1).[1]

An employer who disputes an assessment of withdrawal liability may file an objection with the plan sponsor. 29 U.S.C. § 1399(b)(2)(A). "After a reasonable review of any matter raised," the plan sponsor must notify the employer of (1) its decision, (2) the basis for its decision, and (3) "the reason for any change in the determination of the employer's

_____

[1] The ERISA regulations define common control by reference to the Treasury regulations prescribed under 26 U.S.C. § 414(c). 29 C.F.R. § 4001.3. According to those regulations, one instance where two or more businesses are under common control is where the same five or fewer persons own a controlling interest in each corporation and, "taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such [corporation], such persons" own more than 50 percent of the total shares of each corporation. 26 C.F.R. § 1.414(c)-2(c).

liability or schedule of liability payments." Id. § 1399(b)(2)(B).

An employer dissatisfied with the plan sponsor's response must demand arbitration within a 60-day period after the earlier of the date of the plan sponsor's notification that it has rejected the employer's request for review, or 120 days after the employer's request for review. 29 U.S.C. § 1401(a). "[U]nlike the Federal Arbitration Act, the MPPAA treats an award issuing from such a § 1401 arbitration like an agency determination--the arbitrator decides the issues in the first instance but then the decision is subject to judicial review." Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc., 469 F.3d 369, 375 (4th Cir. 2006).

If, however, the employer does not pursue arbitration, the amount assessed by the plan sponsor as withdrawal liability "shall be due and owing on the schedule set forth by the plan sponsor," which may then "bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1). In such a circumstance, an employer is deemed to have waived review of all issues concerning the determination of withdrawal liability. BES Servs., 469 F.3d at 375.

B.

The Fund is a multiemployer pension benefit plan maintained pursuant to a collective bargaining agreement between the

5

Associated Plumbing, Heating and Cooling Contractors of Jefferson County, Alabama (the "Multiemployer Association") and affiliated local unions of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union"). Defendants are Alabama corporations engaged as plumbing and pipefitting contractors.

On April 8, 1998, Kenneth Julian--PSI's sole shareholder--agreed in writing (on behalf of PSI) "to be bound by provisions of the current labor Agreement executed and presently existing between" the Multiemployer Association and the Union. J.A. 448.[2] PSI further agreed to "make contributions to the . . . Plumbers and Pipefitters National Pension Fund . . . . as provided for by the [labor] Agreements now existing and as hereafter." Id.

The collective bargaining agreement then in effect, as well as all successor agreements, required participating employers to make contributions to the Fund for each hour worked by their employees. PSI began making contributions to the Fund in 1998, and continued to do so until March 10, 2011. On that date, PSI (through Julian) wrote to the Union stating that it wished "to abolish its working relationship with" the Union. J.A. 139. Under the terms of the collective bargaining agreement, PSI's obligation to contribute to the Fund ended sixty days after

---

[2] We refer to this writing as the "Letter of Assent."

tendering the March 10 letter. PSI went out of business sometime in the summer of 2011. Shortly before then, PSI Mechanical filed articles of incorporation.

Well over a year after PSI sent the March 10 letter, the Fund notified Julian that because PSI was "continuing to perform work of the type for which it was previously obligated to make contributions to the Fund" in the jurisdiction of the collective bargaining agreement, PSI had incurred withdrawal liability of $188,685. J.A. 345. Specifically, the Fund suspected that PSI and PSI Mechanical were trades or businesses under common control. In fact, Julian was the sole shareholder of both corporations.

The Fund gave PSI the option to pay the amount owed in one lump sum or in monthly installments. PSI objected and sought review of the imposition of withdrawal liability. The Fund in turn asked PSI to respond to a questionnaire so as to better enable the Fund to assess PSI's objection. PSI, however, refused to answer any questions related to PSI Mechanical, stating that it was "not privy to information necessary to answer" them. J.A. 368.

In the meantime, PSI was still required to make monthly payments on its withdrawal liability. See 29 U.S.C. § 1399(c)(2). Yet, PSI did not comply with its obligation. The Fund sent two late-payment notices to PSI and received no

response to either. The Fund subsequently rejected PSI's objection to the imposition of withdrawal liability, declared PSI in default, and demanded payment of the entire sum of its withdrawal liability plus accrued interest. Defendants made no payments, nor did they demand arbitration.

## C.

The Fund filed suit in the United States District Court for the Eastern District of Virginia against both PSI and PSI Mechanical, seeking to collect PSI's unpaid monthly withdrawal liability payments, along with interest, liquidated damages, and attorney's fees and costs.[3] It also sought to compel Defendants to make future monthly payments when due. The Fund later amended its complaint to ask for the entire outstanding withdrawal liability.[4]

Defendants moved to dismiss the lawsuit for lack of personal jurisdiction, or alternatively, on forum non conveniens grounds. They argued that because PSI and PSI Mechanical are

---

[3] ERISA provides that a plan suing to recover withdrawal liability may also recover interest, liquidated damages, and attorney's fees and costs. 29 U.S.C. § 1132(g)(2). Pursuant to the terms of the Fund's Plan document, liquidated damages are equal to "the greater of: (i) the amount of interest charged on the unpaid balance, or (ii) 20 percent of the unpaid amount awarded." J.A. 343.

[4] The amended complaint also alleges that the Fund had reviewed and rejected in writing PSI's arguments raised in its request for review and that PSI never demanded arbitration.

8

Alabama corporations engaged in business exclusively in Alabama, they do not have sufficient minimum contacts with Virginia for the exercise of personal jurisdiction. In the alternative, Defendants urged that the lawsuit be dismissed because there is an adequate alternative forum in the Northern District of Alabama.

The district court denied the motions. The court found it "pelucidly [sic] clear that there is personal jurisdiction." J.A. 316. It noted that ERISA provides for nationwide service of process and permits lawsuits to be brought in the district where the plan is administered. As a result, the court's exercise of personal jurisdiction over Defendants comported with Fifth Amendment due process principles.

The district court construed Defendants' forum non conveniens claim as one seeking a change of venue under 28 U.S.C. § 1404(a). It declined to grant relief, however, because the Eastern District of Virginia was the Plaintiff's forum of choice and only moderately inconvenient for Defendants. The court further observed that witnesses were unlikely to be needed, and that the interest of justice weighed in favor of keeping the case in Virginia.

The Fund then moved for summary judgment on the sole count of its amended complaint, which the district court granted. Thereafter, the Fund sought liquidated damages, interest, and

attorney's fees and costs. Defendants opposed the request, claiming that the contract that the Fund was seeking to enforce was not sufficiently definite. To assess this claim, the district court reviewed the collective bargaining agreement in effect when Julian signed the Letter of Assent, as well as a successor agreement.

The district court held that the collective bargaining agreement was "neither fatally vague nor unclear; the Agreement makes clear that a breaching party will be liable for unpaid contributions upon complete withdrawal, interest on those unpaid contributions, liquidated damages, and attorney's fees and costs." J.A. 600. The court found immaterial and unpersuasive Defendants' allegation that "Julian never read nor understood the Agreement" because he nevertheless "agreed to be bound" by it. Id. The court entered judgment in favor of the Fund in the amount of $247,013.21.

From the district court's judgment, Defendants appeal.


II.

We first consider the district court's order denying Defendants' motions to dismiss for lack of personal jurisdiction and to transfer venue. We review the district court's decision as to personal jurisdiction de novo, although the underlying factual findings are reviewed for clear error. Carefirst of

10

Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). We review decisions on whether to transfer venue under 28 U.S.C. § 1404 for abuse of discretion. Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991).

Defendants say that the district court lacked personal jurisdiction over them because they are Alabama corporations that do business exclusively in Alabama and have no contacts with Virginia. The district court correctly rejected this contention.

As the district court noted, any action brought under ERISA "may be brought in the district where the plan is administered." 29 U.S.C. § 1132(e)(2). Furthermore, ERISA provides for nationwide service of process. Id. The Fund is administered in Alexandria, Virginia, which is within the Eastern District of Virginia, and Defendants were properly served. Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment. ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626-27 (4th Cir. 1997).

To make out a Fifth Amendment challenge to personal jurisdiction, Defendants had to show that "the district court's assertion of personal jurisdiction over [them] would result in 'such extreme inconvenience or unfairness as would outweigh the

11

congressionally articulated policy' evidenced by a nationwide service of process provision." Denny's, Inc. v. Cake, 364 F.3d 521, 524 n.2 (4th Cir. 2004) (quoting ESAB, 126 F.3d at 627). Normally, when a defendant is a United States resident, it is "highly unusual . . . that inconvenience will rise to a level of constitutional concern." ESAB, 126 F.3d at 627 (internal quotation marks omitted).

Defendants have not satisfied this heavy burden. Indeed, in their brief, Defendants fail to apply the correct rule of law, citing the "minimum contacts" standard we consider when assessing whether personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). That standard, however, is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision. Given Defendants' failure to show that the district court's exercise of personal jurisdiction raises a Fifth Amendment concern, they "must look primarily to federal venue requirements for protection from onerous litigation." ESAB, 126 F.3d at 627 (quoting Hogue v. Milodon Eng'g, Inc., 736 F.2d 989, 991 (4th Cir. 1984)).

On that score, Defendants contend that because they are Alabama corporations with no business ties to Virginia, the

12

district court was obligated to transfer this case to the Northern District of Alabama.[5]  We do not agree.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.  E.g., Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002); Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1255-56 (E.D. Va. 1988) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)).

As a general rule, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate."  Bd. of Trs. v. Sullivant Ave. Props., LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007).  Moreover, Congress intended in ERISA cases to give a "plaintiff's choice of forum somewhat greater weight than would typically be the case," as

---

[5] Like the district court, we will treat Defendants' motion to dismiss for forum non conveniens as a request for transfer of venue under 28 U.S.C. § 1404.

13

evidenced by ERISA's "liberal venue provision."  Cross v. Fleet Reserve Ass'n Pension Plan, 383 F. Supp. 2d 852, 856-57 (D. Md. 2005) (internal quotation marks omitted).  Given the substantial weight accorded to this first factor, Defendants need to make a compelling showing on the remaining factors to persuade us that the district court abused its discretion by refusing to transfer venue.  This they fail to do.

The salience of the witness convenience and access factor is obviated by PSI's failure to demand arbitration.  By failing to arbitrate, PSI waived its right to raise any defenses to the assessment of withdrawal liability.  Thus, the district court properly concluded that there would be little, if any, need for witnesses.

As to the third factor, Defendants have not persuaded us that defending this case in Virginia was so inconvenient to them as to warrant transfer.  On this point, Defendants emphasize that Alabama is "where all events relative to the litigation took place."  Appellant's Br. at 35.  However, it is not unusual for some or all of the relevant acts in an ERISA lawsuit to have taken place outside the district where the plan is administered. Congress nonetheless saw fit to lay venue there, and we see no reason why that legislative intent should yield in this case. Defendants also make no argument as to why the interest of justice favors hearing this case in Alabama.  Consequently, we

14

hold that the district court did not abuse its discretion in refusing to transfer venue.

## III.

Defendants also urge that the district court lacked subject matter jurisdiction over the Fund's claim. Their first contention--that there was no enforceable contract requiring PSI to make contributions to the Fund--is a merits argument that we address later. Here, we consider only Defendants' claim that the Fund's action for withdrawal liability is actually a claim for postcontract contributions and therefore arises under § 8 of the National Labor Relations Act, 29 U.S.C. § 158(a), rather than ERISA. In essence, Defendants argue that the district court did not have subject matter jurisdiction because the Fund's claim involves an unfair labor practice that should have been brought before the National Labor Relations Board. That is not correct.

Under ERISA, an employer that is contractually obligated to make contributions to a retirement fund must do so in accordance with the operative collective bargaining agreement. 29 U.S.C. § 1145. Section 1145 thereby creates a federal right of action allowing a multiemployer pension plan to collect delinquent contributions. <u>Bakery & Confectionary Union and Indus. Int'l</u>

15

Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1020-21 (4th Cir. 1997).

An action to compel an employer to pay overdue withdrawal liability is treated the same as an action to collect delinquent contributions. 29 U.S.C. § 1451(b). And federal district courts have jurisdiction to hear actions compelling an employer to pay withdrawal liability. Id. § 1451(c). This being an action to collect overdue withdrawal liability payments, the district court plainly had subject matter jurisdiction.

In support of its contention otherwise, Defendants draw our attention to Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., 484 U.S. 539 (1988). There, the Supreme Court held that the right of action created by § 1145 "is limited to the collection of 'promised contributions' and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the [National Labor Relations Act]." Id. at 549. However, an action to collect withdrawal liability is far different from one seeking to require an employer "to make postcontract contributions while negotiations for a new contract are being conducted." Id. at 548. As we have explained, § 1451(b)--in conjunction with § 1145--expressly creates a right of action to collect overdue withdrawal liability. We therefore

16

reject Defendants' contention that the district court lacked subject matter jurisdiction.

IV.

A.

We turn now to the district court's grant of summary judgment to the Fund. As a threshold matter, we address Defendants' claim that the district court "flouted the well-known and time-tested summary judgment standard." Appellant's Br. at 46 (quoting Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 283 (4th Cir. 2013)). Essentially, Defendants say that the Fund failed to produce evidence supporting its motion for summary judgment. Defendants are wrong.

A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In this case, the Fund supported its motion with an affidavit from the administrator of the pension fund, correspondence between the Fund and PSI

17

documenting the assessment of withdrawal liability and PSI's request for review, PSI's admissions, and a number of other documents. We find this evidence more than sufficient to shift the burden to Defendants to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

Defendants also argue that the district court erred in granting summary judgment on the basis of the Fund's original complaint, rather than the amended version. This error, however, furnishes no ground for relief. In the first place, the factual allegations in the two complaints are substantially similar. Moreover, we review summary judgment orders de novo, based on our independent review of the entire record. See Turner v. Dammon, 848 F.2d 440, 444 (4th Cir. 1988), abrogated on other grounds by Johnson v. Jones, 515 U.S. 304 (1995). The amended complaint is part of the record, and thus the district court's error poses no obstacle to our review of its decision.

B.

It is undisputed that neither PSI nor PSI Mechanical ever demanded arbitration. While this normally means judicial review of all issues relating to the imposition of withdrawal liability is waived, we have recognized a limited exception to ERISA's arbitration requirement where a party asserts that it is not an

18

"employer" subject to the arbitration requirement. Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 122 (4th Cir. 1991); see also Flying Tiger Line v. Teamsters Pension Trust Fund of Phila., 830 F.2d 1241, 1250 (3d Cir. 1987) (holding that the issue of whether an organization is an employer for ERISA purposes is one for the court).

As a result, the sole issue before the district court was whether PSI is an employer subject to ERISA's arbitration requirement. We hold that it is.

ERISA defines an employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Defendants argue that PSI is not an employer because there is no valid collective bargaining agreement between PSI and the Fund that bound PSI to make contributions. Specifically, Defendants say that the Letter of Assent is insufficient to bind PSI to its promise to contribute to the Fund in accordance with the referenced collective bargaining agreement and its successor agreements. As a result, because there is no valid agreement, PSI was never acting as an employer "in relation to an employee benefit plan."

The parties disagree as to what law applies to the resolution of this issue. Defendants contend that we should

consult Alabama law for this purpose, while the Fund says we should look to federal common law. We agree with the Fund.

We have been clear that "ERISA preempts state law, including state common law." Phx. Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 563 (4th Cir. 1994). ERISA preemption is construed broadly, and displaces any state law that "has a connection with or reference to" an employee benefit program. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983). Similarly, in the labor law context, the Supreme Court has emphasized the importance of national uniformity when deciding issues involving the "consensual processes that federal labor law is chiefly designed to promote--the formation of the collective agreement and the private settlement of disputes under it." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 162-63 (1983) (emphasis added).

Consulting state law to determine when a collective bargaining agreement is formed would undermine uniformity and "exert a disruptive influence upon . . . the negotiation . . . of collective agreements." Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 701-02 (1966). Thus, when determining whether an obligation to contribute to an employee benefit plan exists, state contract law must give way.

In the Letter of Assent, PSI agreed to be bound by the collective bargaining agreement in effect between the Union and

20

the Multiemployer Association. It further agreed to contribute to the Fund as required by the then-existing collective bargaining agreement and any successors. We have previously held that an employer can execute a letter of assent allowing "a multi-employer bargaining association to represent it in § 8(f) negotiations.[6] In such an arrangement, the individual employer agrees to be bound by the § 8(f) agreement reached between the multi-employer bargaining association and the union." Indus. TurnAround Corp. v. NLRB, 115 F.3d 248, 252 (4th Cir. 1997).

We believe that this principle is equally applicable in the present context, and thus hold that the Letter of Assent is sufficient to bind PSI to make contributions to the Fund in accordance with the terms of the collective bargaining agreement. Defendants insist, nonetheless, that the Letter of Assent is invalid because it "leaves open the unbridled obligation of Defendants to accept future changes to the contract." Appellant's Br. at 39. The gist of their argument is that even if the Letter of Assent is valid as to the collective bargaining agreement in effect in 1998 when the

---

6 Under § 8(f) of the National Labor Relations Act, "employers or multi-employer associations in the [building and] construction industry [may] enter into collective-bargaining agreements, commonly called 'pre-hire agreements,' with unions that have not formally established majority status." Industrial TurnAround, 115 F.3d at 252; see also 29 U.S.C. § 158(f).

21

Letter was signed, it does not bind them to successor agreements. However, in Industrial TurnAround, we approved a similar letter of assent that bound the employer to successor contracts. 115 F.3d at 252 ("[Employer] executed . . . a letter of assent . . . binding [employer] to the then current . . . agreement and to all successor agreements."). We see no reason to depart from that holding here.

Finally, even if the Letter of Assent alone did not bind PSI to make future contributions to the Fund, its conduct certainly did. While we have not previously addressed this issue, today we join several of our sister circuits in holding that a collective bargaining agreement can be adopted by conduct manifesting an intention to be bound by its terms. Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc., 385 F.3d 761, 766 (7th Cir. 2004); Carpenters Amended & Restated Health Benefit Fund v. Holleman Constr. Co., 751 F.2d 763, 770 (5th Cir. 1985); Trs. of Atl. Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp., 724 F.2d 1458, 1459-60 (11th Cir. 1983).

The most obvious manifestation of PSI's intent to be bound, of course, was its decision to sign the Letter of Assent. However, that it intended to be bound is also made unmistakably clear by the fact that PSI made contributions to the Fund in accordance with the governing collective bargaining agreements

22

for thirteen years before its complete withdrawal. The district court was therefore correct to reject PSI's belated effort to avoid withdrawal liability.

The record also shows that shortly after PSI went out of business, PSI Mechanical was incorporated and began performing the same work. Because Julian is the sole shareholder of both corporations, ERISA treats them as a single employer. 29 U.S.C. § 1301(b)(1). Consequently, PSI Mechanical's work in the jurisdiction of the type for which contributions were previously required is attributed to PSI. This also means that the Fund may look to PSI Mechanical to satisfy the withdrawal liability owed by PSI.

In sum, given the existence of a valid contract requiring PSI to contribute to the Fund, PSI is an employer under ERISA. And because PSI failed to timely demand arbitration, all the Fund had to prove to win summary judgment was that it gave PSI proper notice of the assessed withdrawal liability. Chi. Truck Drivers v. El Paso Co., 525 F.3d 591, 597 (7th Cir. 2008). The record shows that the Fund did this. The district court therefore correctly granted the Fund's motion for summary judgment, and its judgment is

AFFIRMED.

23