**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1304**

PENSKE LOGISTICS LLC; PENSKE TRUCK LEASING CO., L.P.,

Plaintiffs - Appellees,

v.

FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557 PENSION FUND; JOINT BOARD OF TRUSTEES OF THE FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557 PENSION FUND,

Defendants - Appellants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:15-cv-03277-RDB)

Submitted: March 20, 2020                                  Decided: July 7, 2020

Before DIAZ and FLOYD, Circuit Judges, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Corey Smith Bott, Paul D. Starr, ABATO, RUBENSTEIN AND ABATO, P.A., Baltimore, Maryland, for Appellants. Brian A. Coleman, FAEGRE DRINKER BIDDLE & REATH, LLP, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal concerns a long-running dispute between the Plaintiff-Appellees, Penske Logistics LLC and Penske Truck Leasing Co., L.P. (collectively, "Penske"), and Defendant-Appellants, the Freight Drivers and Helpers Local Union No. 557 Pension Fund (the "Fund") and its Joint Board of Trustees (the "Trustees"). The underlying dispute pertains to whether Penske is liable for Leaseway Motorcar Transport Co.'s (Leaseway) withdrawal from the Fund under the Employee Retirement Income Security Act of 1974 (ERISA). For the reasons stated in this opinion, we affirm the order of the district court affirming the arbitration awards holding that Penske is not liable.

I.[1]

ERISA provides a statutory framework to promote employee benefit plans in private industries by establishing "minimum standards . . . assuring the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). *See generally* 29 U.S.C. §§ 1301–1461. Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and has fulfilled the conditions required to obtain the vested benefit—the worker will actually receive those benefits. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 607 (1993). Multiemployer pension plans, structured in accordance with ERISA, provide for the

---

[1] The legal and factual background in this opinion has been largely taken wholesale from this Court's previous opinion in the matter. *See Penske Logistics LLC v. Freight Drivers & Helpers Local Union No. 557 Pension Fund*, 721 F. App'x 240, 241–45 (4th Cir. 2018).

pooling of contributions and liabilities. *See* 29 C.F.R. § 4001. As enacted, however, employers could withdraw from a multiemployer plan, leaving vested benefits unfunded and threatening the plan's solvency. *Concrete Pipe*, 508 U.S. at 608; *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006).

To "shore up the financial stability of multiemployer pension plans," *BES Servs.*, 469 F.3d at 374, the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) amended ERISA to require a withdrawing employer to pay the employer's proportionate share of the plan's unfunded vested benefits by creating withdrawal liability "in rough proportion to that employer's relative participation in the plan over the last 5 to 10 years," *Borden, Inc. v. Bakery & Confectionery Union & Indus. Int'l Pension*, 974 F.2d 528, 530 (4th Cir. 1992); *see also* 29 U.S.C. §§ 1381, 1391; *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984).[2] "An employer owes withdrawal liability when it makes a complete or partial withdrawal from a pension plan." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,791 F.3d 436, 440 (4th Cir. 2015) (citing 29 U.S.C. § 1381(a)). An employer's complete withdrawal occurs when an employer permanently ceases to have an obligation to contribute under the plan or

---

[2] "An employer's withdrawal from a multiemployer plan reduced the contribution base, which necessitated an increase in the contribution rate of remaining employers in order to cover the plan's existing unfunded vested benefits. As employers withdrew, the rising costs of continued participation in multiemployer plans increased the incentives for further withdrawals. To reverse this trend, the MPPAA required withdrawing employers to pay their fair share of a plan's unfunded vested benefits by creating withdrawal liability, and provided a streamlined process for resolving disputes over withdrawal liability determinations, thereby limiting dispute-resolution costs and preserving plans' assets." *BES Servs.*, 469 F.3d at 374 (citations omitted).

permanently ceases all covered operations under the plan, 29 U.S.C. § 1383(a), and a partial withdrawal occurs when an employer's contribution obligation declines 70% according to the calculation provided in the statute, 29 U.S.C. § 1385(a). *See also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 117, n.1 (4th Cir. 1991). "Plan sponsors"—the designated plan administrators—assess withdrawal liability on employers at the end of each year, and ERISA requires that any dispute over the plan sponsor's assessment of liability be subject to arbitration. 29 U.S.C. §§ 1301(a)(10), 1385(a), 1401(a); 29 C.F.R. § 4221.1.

Under the MPPAA, all trades or businesses under common control are treated as a single employer, and each member of the controlled group is liable for the withdrawal of any other member. 29 U.S.C. § 1301(b)(1); 29 C.F.R. § 4001. If a parent company sells the stock of a subsidiary, however, the parent is not liable for the subsidiary's subsequent withdrawal liability *unless* a principal purpose of the transaction was to evade or avoid withdrawal liability. 29 U.S.C. § 1392(c); *Santa Fe Pac. Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 22 F.3d 725, 727 (7th Cir. 1994). The plan sponsors—during their assessment of withdrawal liability—are the first to determine whether a principal purpose of such a transaction was to evade or avoid withdrawal liability. *See* 29 U.S.C. § 1401(e)(1). "[T]he MPPAA makes it clear that an employer can have more than one principal purpose in conducting a transaction," especially when "one principal purpose can be said to motivate the decision about whether to sell the company at all, while another principal purpose can be said to motivate the decision about how to sell the company." *Sherwin-Williams Co. v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 158 F.3d 387,

4

395 (6th Cir. 1998); *see also Borden*, 974 F.2d at 530 (acknowledging that under 29 U.S.C. § 1384 a company can avoid triggering withdrawal liability by structuring the sale in certain ways).

## II.

The Fund is a multiemployer pension plan, organized under the statutory framework of ERISA to provide pension benefits to participants of beneficiaries. Leaseway had long been a contributing employer to the Fund; it employed over 200 Fund participants in 1996, but only 33 by 2003. Penske acquired Leaseway in 1995, and Leaseway became a member of the Penske-controlled group for MPPAA purposes in 1996. On March 24, 2004, Penske sold 100% of the Leaseway stock to Performance Logistics Group (PLG) (the "Transaction") in exchange for a secured $25 million note and for Penske to receive 43.5% of the stock of PLG, among other things.

In early 2006, the Trustees—who are the plan sponsors—issued an assessment of withdrawal liability to Penske for the partial withdrawal of Leaseway that was effective December 31, 2004, stating that Leaseway's contribution obligation to the Fund had declined at least 70% in 2004. *See* 29 U.S.C. § 1385(a).[3] Penske objected to the assessment alleging that, among other things, its sale of Leaseway terminated its liability for Leaseway's withdrawal liability. The Trustees reviewed this objection and determined

---

[3] The Fund seeks satisfaction of this assessment from Penske, in part, because Leaseway had filed for bankruptcy by the time the assessment was completed, and PLG had claims pending before the bankruptcy court.

5

that a primary purpose of the Transaction was to evade or avoid withdrawal liability such that Penske should remain liable for Leaseway's withdrawal. *See* 29 U.S.C. § 1392(c). As a result, Penske initiated arbitration to contest its liability and, as is required by statute, paid the withdrawal liability assessed while it awaited review. 29 U.S.C. § 1401(a), (d). Subsequently, the Trustees assessed Penske for withdrawal liability for Leaseway's second partial withdrawal from the Fund for its declining contribution obligation in 2005, effective December 31, 2005, and then for Leaseway's complete withdrawal in 2006 after ceasing covered operations under the Fund, effective December 15, 2006—both of which Penske also contested. *See* 29 U.S.C. §§ 1383(a), 1385(a). The parties agreed to consolidate the three challenges.

Over the next six years, the parties conducted extensive discovery. The arbitration record contains over 50,000 pages of documentary evidence, five days of hearings, and two rounds of briefing, and includes the Arbitrator's Phase One Rulings, issued July 13, 2012, and a 123-page award (the "Original Award"), issued September 30, 2015. In the Phase One Rulings, the Arbitrator determined that Penske was not liable for Leaseway's complete withdrawal because unrelated predicates for liability were not satisfied. The Original Award held that Penske was not liable for either of Leaseway's partial withdrawal assessments based on the Arbitrator's conclusion that a principal purpose of the Transaction was not for Penske to evade or avoid withdrawal liability. The Arbitrator ruled that the Fund must refund Penske's withdrawal liability payments, amounting to $9,586,345.39, plus interest, and that Penske was entitled to an award of attorneys' fees

6

due to the Fund's discovery abuse. *See* 29 C.F.R. §§ 4219.31(d), 4219.32, 4221.10(c); *see also* 29 U.S.C. § 1401(d).

Thereafter, on October 16, 2015, Penske filed a motion with the Arbitrator for modification of the Original Award pursuant to 29 C.F.R. § 4221.9(b)(3) to clarify the interest rate and amount of attorneys' fees, and the Fund filed a motion in opposition. With no ruling on the motion and no communication from the Arbitrator, on October 27, 2015, Penske filed a complaint against the Fund and the Trustees to enforce the Original Award in district court pursuant to 29 U.S.C. § 1401(b)(2). The Fund and the Trustees responded with a counterclaim to vacate the Original Award, alleging that the Arbitrator applied the wrong burden of proof to determine whether a principal purpose of the Transaction was to evade or avoid withdrawal liability. The Fund and the Trustees also filed a motion to stay proceedings pending the Arbitrator's consideration of Penske's motion for modification, which the district court denied. The parties filed cross-motions for summary judgment, and the district court summarily affirmed the Original Award.

The Fund and Trustees appealed to this Court raising three challenges: first, that the district court erred in denying its motion to stay the proceedings pending the Arbitrator's decision on the motion for modification; second, that the district court erred in affirming the Original Award because the Arbitrator applied the wrong burden of proof, incorrectly concluded that the burden was satisfied, and clearly erred in reaching several factual conclusions; and third, that the district court erred in determining that the attorneys' fees awarded by the Arbitrator were reasonable.

7

On January 10, 2018, this Court, in a split decision, issued its opinion. *Penske Logistics*, 721 F. App'x 240. As to the issue of the stay, the majority of the Court held that the district court did not abuse its discretion in denying a stay of the proceedings. *Id.* at 244. As to the district court affirming the Original Award, the majority held that "the Arbitrator erroneously placed the burden on the Fund to prove by a preponderance that a principal purpose of the Transaction was to evade or avoid withdrawal liability, and that this failure to apply the correct burden amounted to clear error." *Id.* at 245. The majority explained that "[t]he Arbitrator's statements throughout the Award indicate that his findings resulted from a lack of evidence that a principal purpose was to evade or avoid withdrawal liability, thereby erroneously placing the burden on the Fund rather than the Employer." *Id.* The majority held that "under the correct burden, the Arbitrator should have found evidence *disproving* that Penske intended to evade or avoid withdrawal liability." *Id.* The Court therefore remanded for further proceedings, and the majority did not address the third and final issue of attorneys' fees.[4]

On June 22, 2018, the Arbitrator issued another Award (the "Supplemental Award"), concluding that the "overwhelming record evidence established that the Transaction was entered into on an arms' length basis for reasons wholly unrelated to withdrawal liability." J.A. 1939. Citing his Original Award, the Arbitrator stated that the record evidence establishing that the evasion or avoidance of withdrawal liability was not

---

[4] As outlined below, Judge Diaz stated that he would have held that the district court did not err in ruling that the Arbitrator's award of attorneys' fees was reasonable. *Id.* at 249 n.2 (Diaz, J., dissenting).

a principal purpose of the Transaction was so "overwhelming" that the record "raise[d] serious doubts as to the good faith behavior on the part of the Trustees in initially assessing Penske with withdrawal liability and more significantly in continuing to pursue those claims in arbitration." J.A. 1929–30 (alteration in original). The Arbitrator held that the "overwhelming weight of record evidence established that Penske was motivated to enter into the Transaction by legitimate business reasons wholly unrelated to considerations of withdrawal liability," J.A. 1930, and that Penske had proved "by a preponderance of the record evidence[] that the evasion or avoidance of withdrawal liability was not a principal purpose of the Transaction," J.A. 1946.

On March 7, 2019, presented with the parties' respective cross-motions for summary judgment to affirm and vacate the Arbitrator's Supplemental Award, the district court affirmed the Arbitrator's Original Award as supplemented by the Supplemental Award. J.A. 2088–2100. The Fund and Trustees timely appealed to this Court.

III.

On appeal, the Fund and Trustees make two principal arguments: (1) that the district court erred in enforcing the Arbitrator's Supplemental Award because the Arbitrator made a number of errors of both law and fact; and (2) that the district court erred in holding that the attorneys' fees awarded by the Arbitrator were reasonable.

9

A.

We turn first to the Fund and Trustees' argument that the district court erred in affirming the Arbitrator's awards.

This Court reviews de novo the district court's decision to grant summary judgment, applying the same standards as the district court. *Grutzmacher v. Howard Cty.*, 851 F.3d 332, 341 (4th Cir. 2017). When considering an arbitrator's award issued under the MPPAA, this Court reviews findings of fact for clear error and conclusions of law de novo. *BES Servs.*, 469 F.3d at 375; *see* 29 U.S.C. § 1401(c). Under the MPPAA, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c). When assessing withdrawal liability, a plan sponsor (here, the Trustees) makes a factual determination of whether a principal purpose of a parent company's stock sale of its subsidiary was to evade or avoid withdrawal liability. Under ERISA, "this factual finding is [also] entitled to a presumption of correctness." *Penske Logistics*, 721 F. App'x at 244 (citing 29 U.S.C. §§ 1392(c), 1401(a)(3)(A); *Concrete Pipe*, 508 U.S. at 620–21). An employer challenging this finding has "the burden . . . to disprove [the] challenged factual determination by a preponderance." *Concrete Pipe*, 508 U.S. at 629; *see also* 29 U.S.C. § 1401(a)(3)(A) ("[A]ny determination made by a plan sponsor under [29 U.S.C. § 1392(c)] is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous."). Here, the Fund determined that Penske was liable for Leaseway's withdrawal liability based on its factual

determination that a principal purpose of the Transaction was for Penske to evade or avoid withdrawal liability.

First, the Fund and the Trustees contend that the Arbitrator failed to undertake a complete review of the entire arbitration record on remand from this Court. The Fund and Trustees make this argument because in this Court's 2018 opinion, we stated that upon remand the matter would "likely require review of the entire arbitration record." *Penske Logistics*, 721 F. App'x at 246. However, we did not mandate that the Arbitrator re-review every word of the hearing transcripts or parse through every one of the 50,000 documents in the arbitration record on remand. In his Supplemental Award, the Arbitrator recognized that the record was "voluminous" and that it was "summarized in some detail" in his Original Award. J.A. 1930. Despite that, the Arbitrator proceeded to conduct an "additional evaluation," J.A. 1930, and thoroughly explained the relevant record evidence that led him to conclude that the evasion or avoidance of withdrawal liability was not a principal purpose of the Transaction. Therefore, we are satisfied that the Arbitrator properly followed this Court's mandate.

Second, the Fund and the Trustees argue that on remand the Arbitrator again applied the wrong burden of proof and failed to afford the Trustees' findings the statutory presumption of correctness. This argument is without merit. Consistent with this Court's mandate and the Supreme Court's decision in *Concrete Pipe*, the Arbitrator recognized that the "burden of proof rested with the Employer to prove, by a preponderance of the record evidence," that the evasion or avoidance of withdrawal liability was not a principal purpose of the Transaction. J.A. 1928. The Arbitrator did not mince his words in recognizing that

11

this was not a close case and stated that Penske had shown "overwhelmingly (and not simply by a mere preponderance of the record evidence) that the Transaction was entered into for legitimate business reasons wholly unrelated to potential withdrawal liability claims by the Fund." J.A. 1930–31. As a result, the Arbitrator stated that Penske had "clearly rebutted the presumption of correctness applicable to the . . . assertion that a principal purpose of the Transaction was to evade or avoid withdrawal liability." J.A. 1939. Reading the Supplemental Award, we are left with no doubt that the Arbitrator applied the correct standard of proof and afforded the required presumption of correctness to the Trustees' factual finding.

Third, the Fund and Trustees argue that the Arbitrator failed to determine a principal purpose of the Transaction in his Supplemental Award. In remanding the case, this Court stated that "the Arbitrator should have found evidence *disproving* that Penske intended to evade or avoid withdrawal liability." *Penske Logistics*, 721 F. App'x at 245. On remand, the Arbitrator abided by this Court's mandate. As the Arbitrator stated in his Supplemental Award, the Arbitrator had found "that Penske had shown overwhelmingly (and not simply by a mere preponderance of the record evidence) that the Transaction was entered into for legitimate business reasons wholly unrelated to potential withdrawal liability," J.A. 1930–31, and that the record evidence "rebutted any inference that the Transaction had, as a principal purpose[,] the evasion or avoidance of that withdrawal liability," J.A. 1935. The Arbitrator's Original and Supplemental Awards both outlined the record evidence and reasons for why the Transaction occurred, with the Arbitrator finding that "Penske's goals . . . were to eliminate responsibility for managing and operating [Leaseway] and to obtain

12

cash for the sale of that business as soon as was practicable provided that it also obtained appropriate overall value for the transfer." J.A. 1932; *see also* J.A. 122–35. Therefore, the Arbitrator found "overwhelming" record evidence disproving that Penske intended to evade or avoid withdrawal liability. J.A. 1939. Consequently, the Arbitrator committed no error of law.

Fourth, the Fund and Trustees argue that the Arbitrator's finding of fact that the avoidance of withdrawal liability was not a principal purpose of the Transaction was clearly erroneous. Clear error requires "a definite and firm conviction that a mistake has been committed." *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 279 (4th Cir. 2018). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). Moreover, when "findings are based on determinations regarding the credibility of witnesses, . . . even greater deference" must be given to the fact-finder's factual findings. *Id.* at 575; *see Concrete Pipe*, 508 U.S. at 623.

Thus, although the Fund and Trustees spill much ink arguing why their version of the facts support a different conclusion, it is not for this Court to reverse the Arbitrator's factual findings, even if we would have weighed the evidence differently. *See Anderson*, 470 U.S. at 573. As the Arbitrator's Original and Supplemental Awards make clear, much of this case turned on the credibility of the parties' respective witnesses. Specifically, with respect to Penske's motivation for the Transaction, the Arbitrator found Penske's fact witness, Mr. Angelbeck, credible, J.A. 1931–33, but did not find the Fund and Trustees'

13

expert witness, Mr. Wensel, credible, J.A. 1934–40. Though the Fund and Trustees take issue with how the Arbitrator decided the case and the fact that the Arbitrator did not give as much credence to their evidence, it is not the role of this Court, without more, to interfere with such factual determinations.

On this point, the Fund and Trustees also argue that the Arbitrator "ignored" certain evidence that they allege showed Penske's motivating factor for the Transaction was evading or avoiding withdrawal liability. *See* Appellants' Br. 26–29. However, this is just another iteration of the argument that the Arbitrator came to the wrong conclusion. The fact that the Arbitrator did not discuss every piece of evidence in his Original Award or Supplemental Award does not mean that the Arbitrator "ignored" evidence. As discussed above, the record in this case was substantial, and the Arbitrator was not required to cite every piece of evidence in making his determination. Although the Fund and Trustees "would have the Arbitrator write a much more detailed opinion," J.A. 2098, the Arbitrator's Supplemental Award "states the basis for the award" and thus complies with the regulations for an arbitration award, *see* 29 C.F.R. § 4221.8 (mandating that the arbitrator issue a "written award" that "[s]tates the basis for the award, including such findings of fact and conclusions of law . . . as are necessary to resolve the dispute").

Although the Fund and Trustees vigorously attempt to relitigate the case on appeal by pointing to specific pieces of record evidence in an effort to undercut the Arbitrator's conclusion, after reviewing the record as a whole, we hold that the Arbitrator's finding that the avoidance of withdrawal liability was not a principal purpose of the Transaction was not clearly erroneous. Therefore, Penske is entitled to summary judgment, as there is no

14

genuine issue of material fact and it is entitled to judgment as a matter of law. The district court thus did not err in affirming the Arbitrator's Original Award as supplemented by the Supplemental Award.

B.

The Fund and the Trustees also argue that the district court erred in ruling that the Arbitrator's grant of $44,302 in attorneys' fees to Penske was unreasonable.

The Arbitrator awarded Penske some of its attorneys' fees because the Fund's counsel failed to prepare the Fund's Federal Rule of Civil Procedure 30(b)(6) witness and because, during depositions, the Fund's counsel "repeatedly interposed speaking objections and improperly objected to legitimate questions . . . on the grounds of attorney-client privilege." J.A. 141. Consequently, the Arbitrator awarded fees due to the Fund's discovery misconduct per 29 C.F.R. § 4221.10, which provides that "[t]he arbitrator may require a party that initiates or contests an arbitration in bad faith or engages in dilatory, harassing, or other improper conduct during the course of the arbitration to pay reasonable attorneys' fees of other parties."

The Fund and Trustees contend that the district court erred because it determined that the award of Penske's attorneys' fees was reasonable without following the guidelines laid out in the United States District Court for the District of Maryland Local Rules, Appendix B (the "Local Rules"). However, this argument is without merit. Appendix B of the Local Rules applies when "a prevailing party would be entitled, by applicable law or contract, to reasonable attorneys' fees based on a set of criteria including hours and

15

rates." Therefore, "[b]y its terms, Appendix B applies to fee awards for a 'prevailing party.'" *Penske Logistics*, 721 F. App'x at 249 n.2 (Diaz, J., dissenting). "Unlike the fee-shifting statutes addressed by Appendix B, the fees awarded here serve as a sanction for discovery misconduct and compensate Penske regardless of its success on the underlying merits." *Id.*

As a result, the district court did not err in not referring to Appendix B before ruling on the reasonableness of the Arbitrator's attorneys' fee award.[5]

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[5] The Fund and Trustees also perfunctorily assert that the Arbitrator's award of attorneys' fees was not reasonable because attorneys' fees should not be duplicative, excessive, redundant, or unnecessary. *See* Appellants' Br. 36–37. However, the Fund and Trustees have failed to particularize on appeal any reason why the Arbitrator's award for attorneys' fees is unreasonable.